# Charleston.

## ABBOTT v. L'HOMMEDIEU.

### Decided May 2, 1877.

1. The true purpose and intent of the thirty-fourth section of chapter one hundred and thirty, of the Code of 1868, in providing for an affidavit, is complied with, if it appears by the deposition of the witness, whose deposition was taken, or other evidence, that the witness whose deposition was taken, resided out of the state, or was out of it in the service of the state &c. at the time the deposition was taken.

2. The exercise of the equity branch of jurisprudence respecting the recision and specific performance of contracts, is not a matter of right in either party; but it is a matter of discretion in the court, not indeed, an arbitrary or capricious discertion, dependent upon the mere pleasure of the Judge, but of that sound and reasonable discretion, which governs itself as far as it may, by general rules and principles, but, at the same time, which withholds or grants relief according to the circumstances of each particular case, when these rules and princi les will not furnish any exact measure of justice between the parties.

3. Where a contract respecting real property is, in its nature and circumstances, unobjectionable, it is as much a matter of course for courts of equity to decree a specific performance of it as it is for a court of law to give damages for the breach of it. And generally courts of equity will decree a specific performance when the contract is in writing and is certain and is fair in all its parts, and is for an adequate consideration and is capable of being performed, but not otherwise.

4. In suits for specific performance of contracts in courts of equity, such courts will allow the defendant to defend himself by evidence to resist a decree, where the plaintiff could not always by permitted to establish his case by like evidence.

5. Although courts of equity will not encourage laches; yet if there has not been a strict legal compliance with the terms of the contract, and the non-compliance does not go to the essence of the contract, relief will not be granted.

6. Equity follows the law in holding that time does not run against one who is in possession in the exercise or assertion of a right, and hence, a vendee who enters upon land and holds the land with the vendor's consent and acquiescence will not be barred by the mere lapse of time, nor until he is put in default by a notice to surrender the premises or pay the price.

7. Time is not in courts of equity considered, ordinarily, of the essence of a contract for the sale of land, and especially as to the payment of purchase money. Perhaps there may be circumstances or terms employed such as to take the case out of the general rule.

An appeal from decrees of the circuit court of Fayette county, rendered on 7th April, 1875, and 5th April, 1876, in a cause in chancery, in said court, then pending in which L. L. Abbott, was plaintiff, and Charles L'Hommedieu, was defendant.

The appeal was allowed upon the petition of said defendant.

Hon. Homer A. Holt, Judge of the eighth judicial circuit, presided below.

HAYMOND, JUDGE, who delivered the opinion of the Court, fully states the case.

*J. W. Davis and A. C. Snyder,* for the appellant, referred in their brief filed, to the following authorities:

Story's Eq. Jur., §750; Fry on Sp. Per. 182, 184; 3 Bibb. 52; 2 Mar. 266; 3 Litt. 293; 6 Mon. 371; 3 J. J. Mar. 231; 2 Tuck. Com. 3 book, ch. 21, §3, *Bowles v. Woodson,* 6 Gratt. 88, *Garnett v. Macon,* 6 Call 371; Green J. in *Vail v. Nelson,* 4 Rand. 480; Story Eq. Jur. §742, 769, 770, 771, *Jones v. Roberts,* 3 H. & M. 441.

*Samuel Price and Wm. H. Hogeman* for appellee.

HAYMOND, JUDGE, delivered the opinion of the court:

On the 8th day of April, 1873, the plaintiff brought his suit, in chancery, in the circuit court of the county of Fayette, against the defendant, L'Hommedieu. Afterward at the rules for the following May, the plaintiff filed, in the clerk's office of said court, his bill against the said defendant.

The plaintiff's said bill is as follows, viz:

"Humbly complaining, your orator, L. L. Abbott, respectfully shows unto your honor, that on the 11th day of December, 1858, your orator's father, Isaac H. Abbott, entered into an agreement, in writing, with the above named defendant, Charles L'Hommedieu, which agreement is signed by the said defendant, by which the said defendant covenanted and agreed, upon payment to him of the sum of $464.00, with legal interest thereon from September 5, 1853, to convey to the said Isaac H. Abbott a tract of land containing 509 acres, on Laurel creek, in Fayette county, West Virginia; that under the said agreement there has been paid to the said defendant, two sums of money on account of the said sum of $464.00, aforesaid, viz: $200.00 on July 1, 1859, and $72.83 on November 1, 1860; that subsequent to the agreement aforesaid, the said Isaac H. Abbott, for a valuable consideration, assigned, transferred and conveyed his interest in the aforesaid agreement to your orator, which assignment is in writing, and together with the first agreement hereinbefore described, is recorded in the office of the clerk of the county court of Fayette county, West Virginia; that this complainant, by virtue of the aforesaid agreement and assignment, is in possession of the said tract of 509 acres; that he is entitled to a deed therefor; that he has been ready and has offered to pay to the said defendant the balance due him, according to the tenor and effect of the said original agreement; that he has paid the taxes on the whole tract for many years, and for the defendant's proportion

thereof he is entitled to a credit—(he files an account of the taxes as a part of this bill, marked taxes); that he has made a legal tender of the actual amount due thereon to the said defendant, but the said defendant has hitherto, and still continues to refuse to receive and accept the same, and to convey to your orator the said tract of land. Inasmuch as your orator is remediless except in a court of equity, he prays for a specific performance of the said agreement; that a decree be made by your honor requiring the defendant to convey to your orator the tract of land in said agreement specified; which agreement, with the assignment aforesaid, are herewith filed, marked A and B, and prayed to be read as part hereof; and that such other orders and decrees be entered as your orator's cause may require. And as in duty, &c.

This bill appears to have been sworn to by the plaintiff therein, the agreement or contract between the defendant, L'Hommedieu, and Isaac H. Abbott, and the endorsements thereon and alleged assignment to plaintiff, referred to in the bill, are as follows, viz : " Memorandum of agreement, made and entered into this 11th day of December, 1858, between Charles L'Hommedieu, of the one part, and Isaac H. Abbott, of the other part, both of the county of Fayette, and State of Virginia, witnesseth : That we have this day agreed upon a division line through the tract of land which I, said L'Hommedieu, bought of Samuel McD. Reed, agent for Magdaline Reed, which land lies on Laurel creek, in the said county and state aforesaid, joining the land of Jackson Burgess, T. S. Robson, Cassady and others. It is hereby agreed that the division line begins at two spruce pines and gum on the west bank of Laurel creek, below the mouth of the branch running down from the " old house" in which Brogan now lives, and running north 84 degrees west 476 poles to two chestnut oaks on top of a mountain, at the head of the Orchard branch. It is hereby agreed that the said L'Hommedieu is to have

the land on the south side of said line, joining Tatum Cassady and Myles, and that the said Isaac H. Abbott is to have the land north of the said line, joining Jackson Burgess, T. S. Robson, Landige and William Grinsted; the said line was run and marked through on the line by T. S. Robson, surveyor, on the 4th of July, 1857, which marked line is the one we are to abide by. And the said Charles L'Hommedieu further binds himself to make unto the said I. H. Abbott a general warranty deed to the said land on the north side of said line upon the payment (by the said Abbott) of $464.00, with interest from the 3d day of September. 1853, till paid.

In testimony whereof, we, Charles L'Hommedieu and Isaac H. Abbott, do hereunto set our hands and seals, this the day and year first above written.

<div align="right">

"CHAS. L'HOMMEDIEU. [Seal.]
"ISAAC H. ABBOTT.     [Seal.]

</div>

"Teste :
  "THOS. S. ROBSON."

" Received of Isaac H. Abbott, his note for the within amount of $464.00, payable one day after date, with interest from 5th September, 1853, agreeably to the within article, this the 11th day of December, 1858.

<div align="right">

"CHARLES L'HOMMEDIEU."

</div>

<div align="right">

" FAYETTE COUNTY, VA., July 1, 1859.

</div>

"$200.00.—Received of Isaac H. Abbott, $200.00, on the note held by me, of which the above is a memorandum.

<div align="right">

" CHARLES L'HOMMEDIEU."

</div>

<div align="right">

"FAYETTE COUNTY, VA., Nov. 1, 1860.

</div>

"$72.83.—Received of Isaac H. Abbott, $72.83, on the note held by me, of which the above is a memorandum.

<div align="right">

"CHARLES L'HOMMEDIEU."

</div>

"STATE OF WEST VIRGINIA, FAYETTE COUNTY, }
    RECORDER'S OFFICE, August 29, 1872. }
"I, G. M. Blume, recorder for the county and state

aforesaid, do certify that Thos. S. Robson, of the parties whose names are signed to the foregoing title bond, bearing date on the 11th day of December, 1858, personally appeared before me, in my office, and made oath that Charles L'Hommedieu, whose name is also signed to said writing, signed and sealed the same before them, to be his act; and Isaac H. Abbott, in his own proper person acknowledged before me, the said writing to be his act, and the same is thereupon admitted to record.

"Teste:            "G. M. BLUME, *Recorder.*"

"This assignment, made this 17th day of August, 1867, between Isaac H. Abbott, of the county of Fayette, and State of West Virginia, party of the first part, L. L. Abbott, of the same place, party of the second part, witnesseth: That the said party of the first part, for and in consideration of the sum of $1,500.00, lawful money of the United States of America, to him in hand paid by the party of the second part, at or before the ensealing and delivery of these presents, and the receipt whereof is hereby acknowledged, hath assigned, transferred and set over, and by these presents doth assign, transfer and set over to the party of the second part, his heirs, executors, administrators and assigns, all his right, title and interest in and to a certain agreement and title bond, executed to the party of the first part by Charles L'Hommedieu, on the 11th day of December, 1858, to sell and convey to the said party of the first part, a certain tract of land lying on Laurel creek, in the county aforesaid, and on which the said Isaac H. Abbott now resides—the said tract containing 509 acres, be the same more or less, and which said title bond is hereto annexed; and the said party of the second part hereby binds himself, his heirs, executors, administrators and assigns to release the said party of the first part from any further payments on said land.

"In witness whereof the parties have hereunto set their hands and seals, the day and year first above written.

<div style="text-align:right">

1877.
January Term.

Abbott
v.
L'Hommedieu.

</div>

"ISAAC H. ABBOTT. [Seal.]
"L. L. ABBOTT. [Seal.]"

" Witness :
"W. F. BAHLMAN,
"J. H. ABBOTT."

"STATE OF WEST VIRGINIA, COUNTY OF FAYETTE, }
RECORDER'S OFFICE, August 29, 1872. }

I, G. M. Blume, recorder for the county of Fayette, state aforesaid, do certify that Isaac H. Abbott and L. L. Abbott, parties whose names are signed to the foregoing assignment, bearing date 17th day of August, 1867, personally appeared before me, in my office, and acknowleged the same to be their act, and the same being stamped, $1.50 cents, is admitted to record.

"Teste :    "G. M. BLUME, *Recorder.*"

On the 14th day of September, 1873, it appears that defendant, L'Hommedieu, appeared in court and with leave of the court filed his answer to plaintiff's bill, to which the plaintiff replied generally. The answer of said L'Hommedieu is as follows: "Respondent, for answer to so much of said bill as he is advised it is material for him to answer, says, that it is true that he, to-wit: on the 11th day of December, 1858, sold to Isaac H. Abbott, not five hundred and nine acres of land, but one-half of a tract previously purchased by respondent of Samuel McDowell Reed, agent of Magdaline Reed, which last mentioned tract contained eight hundred and forty-eight acres, more or less, and divided said eight hundred and forty-eight acre tract so as to give to said Isaac H. all that portion of the latter tract lying north of a certain line agreed upon by the parties for the one-half of the said Isaac H.    Said Isaac H. Abbott executed a bond for $464.00 for said one-half, and made the two payments upon said bond specified in said bill.    At the time of said sale to said Isaac H. Abbott, said respondent was embarrassed pecuniarily, and made the last mentioned

sale to raise money to assist him to pay for said eight hundred and forty-eight acre tract, the greater portion of the purchase money of which was then in arrear. Said Isaac H. Abbott, however, never paid anything more than is mentioned above, but on the contrary thereof, became so involved in debt, and so straitened for means to support himself and family, the said respondent, notwithstanding his own embarrassments, was prevailed upon by the earnest and repeated solicitations of said Isaac H. Abbott to furnish and advance, and did furnish and advance, to him large sums of money, tobacco and other valuables, amounting in the aggregate to the sum of $1,635.60 . The particulars of said advancements will more fully appear by reference to an account thereof, herewith filed, marked B, and prayed to be taken as part of this answer. The claim against respondent for said eight hundred and forty-eight acres of land was transferred to Morris Harvey, and he brought suit for the same in the circuit court of Fayette county against respondent and said Isaac H. Abbott. Respondent was then very much embarrassed financially, growing in great part out of the advances aforesaid, and he complained to said Isaac H., and threatened to sue upon the $464.00 bond aforesaid, and compel payment thereof ; and thereupon said Isaac H. made and signed a certain writing, bearing date on the 8th day of June, 1870, and now to the court here shown, whereby he agreed that if he should not pay the balance of said bond before said eight hundred and forty-eight acres should be legally brought to sale, then so much of said one-half of said eight hundred and forty-eight acres should be sold as should be necessary to pay the balance aforesaid upon the bond aforesaid, as well as one-half of the costs of said suit; and finally, to-wit: on the 19th day of February, 1871, said Isaac H. Abbott having become hopelessly insolvent and wholly unable to pay respondent any part of the advances aforesaid, and unable to pay even the balance aforesaid of said bond, except by sale of the one-half of said eight hun-

dred and forty-eight acre tract of land purchased by said Isaac H. Abbott as aforesaid, the said Isaac H. Abbott declared his purpose to abandon his said purchase, and thereupon said respondent and said Isaac H. Abbott, to-wit: on the day and year last aforesaid, mutually agreed that said respondent should remit to and abandon in favor of said Isaac H. all claim upon the bond aforesaid, and all claim and demand for and upon said account of $1,635.60, and that said Isaac H. should surrender and remit to said respondent all claim upon said one-half of the tract of eight hundred and forty-eight acres of land aforesaid, and that said Isaac H. should deliver to said respondent the title bond in said bill mentioned, and that said respondent should deliver said account and $464.00 bond to said Isaac H.; said title bond and $464.00 bond and $1,665.60 account were never delivered, but said respondent relying upon the last mentioned agreement, forebore to sue upon the $464.00 bond aforesaid, as well as upon the account of $1,635.60, until the latter would be barred by the statute of limitations in any suit that could now be brought for it. And said respondent also relying upon said agreement, with much trouble and great pecuniary sacrifice, raised money and paid for said eight hundred and forty-eight acre tract of land without any aid from said Isaac H., except as above set forth, as will more fully appear by reference to a copy of said suit of said Harvey. And said plaintiff well knew all the foregoing facts when the assignment of the title bond mentioned in said bill was made to him, but the said one-half of said eight hundred and forty-eight acres of land has greatly appreciated of late, and, therefore, said plaintiff, who is a son of said Isaac H., combined and confederated with the latter to defraud respondent of the enhanced value of said one-half of said eight hundred and forty-eight acres of land, as well as of said $1,635.60 formerly due on account as aforesaid. Respondent avers that the assignment of said title bond to said plaintiff was made by said Isaac H. long after the date of said

assignment, was made without consideration, and was made by said Isaac H. and accepted by said plaintiff, to defraud respondent as above indicated. And having fully answered, respondent prays to be hence dismissed," &c."

The writing alleged to be signed by said Isaac H. Abbott, and referred to in the foregoing answer, is as follows: .

"Suit has been brought in the circuit court by Morris Harvey to satisfy a bond given by Charles L'Hommedieu, in the purchase of a tract of land, bought of Samuel McD. Reed, as agent of Magdaline Reed. And as the said Charles L'Hommedieu has since sold to me a part of the land, and holds my bond for the purchase money, and would have brought suit at the August term for the payment of said bond, this is to certify that, to avoid the expenses of suit, should the bond held by the said L'Hommedieu not be satisfied by the time the land is brought to sale, I agree that a portion of my land shall be sold, sufficient to pay the balance due on said bond, and half the cost that may accrue by the action taken by the said Morris Harvey.

"Witness my hand and seal.

"ISAAC H. ABBOTT, [Seal].

"*Fayette County, June* 23, 1870."

This last quoted writing is alleged, in L'Hommedieu's answer, to have been made on the 8th day of June, 1870. The account of $1,635.60 referred to in the answer of defendant, Charles L'Hommedieu, is as follows:

"Amount of bond, dated Dec. 11, 1858, and drawing interest from September 5, 1853; principal..........................$ 464 00
Interest to July 1, 1859 –five years, nine months, twenty-six days.............................. ...... ... ...................... .. 162 09

Principal and interest....,.............. ..... .........................$ 626 09
Deduct first payment..............:................................ 200 00

Principal.............. ........................------......... .........$ 426 09
Interest to November 1, 1860—one year four months........ 34 08

Principal and interest...............................,......... ...........$ 460 00

Deduct second payment................................................ .....   2 837

Principal ......... ...................................................................$ 387 34
Interest to February 3, 1871 -- ten years, three months,
    twenty-two days...... .................... ........ ....... ..............   239 63

Amount of bond at the time of sale..................................$ 626' 97
One-half Cost of suit..... ......... ...... ....... ..... ........ .....     75 00

                                                               $ 701 97

I. H. ABBOTT, IN ACCOUNT WITH C. L'HOMMEDIEU.

Amount of note dated May 1, 1850............ ...... .................. ......$ 150 00
Interest to February 23, 1871 - twenty years, nine months,
    twenty-two days...... ...... ...... ...... ............ ... .......... .:....   187 30
Amount for horse, November 1, 1861...... ......... ... ...... ......   100 00
Interest to February 23, 1871—nine years, three months,
    twenty-two days...... ............. ...... ...... ...... ...... ...... ......     55 86
Amount loaned August 20, 1862... ......... ...... ...... ... ...... .:..   675 00
Interest to February 23, 1871—eight years, six months
    three days...... ............ ......... ...... ...... ...... ...... ... ...   344 58
One third crop tobacco, May 1, 1867..............................   100 00
Interest to February 23, 1871 - three years, nine months,
    twenty-two days. ...... ...... ...... ...... ...... ...... ...... ......     22 86

                                                 $1,635 60

On the 4th day of September, 1873, the court made this order in the cause, viz:

"This cause came on this day to be heard, upon the bill, answer and exhibits, and by consent of parties, the court, without passing upon the issues presented by the pleadings, doth adjudge, order and decree, that this cause be referred to G. M. Blume, Esq., who is appointed a commissioner for that purpose, to take, state and report the following accounts:

"1st. What quantity of land the defendant agreed to convey to Isaac H. Abbott, by the contract set out in, and filed with the bill.

"2d. How much money the said Isaac H. Abbott agreed to and did in part pay thereon.

"3d. How much of the land agreed to be conveyed to the said Isaac H. Abbott, by defendant, the said defendant has, since the date of such contract, conveyed to other parties, and to whom.

"4th. What abatement, if any, the plaintiff is entitled to on the balance due on said contract by reason of such conveyances or sales by the defendant or others, and also by reason of the payment of taxes, by complainant, on the whole of the tract described in the bill.

"5th. At what time Isaac H. Abbott assigned the contract in the bill mentioned to the complainant, and what was the consideration for such assignment. In taking such account the said commissioner shall give the parties to this suit at least ten days' notice."

The commissioner made his report to the court, and he reports:

"1st. That by the said agreement, or contract, of the 11th day of December, 1858, the defendant, L'Hommedieu, agreed to convey to Isaac H. Abbott, one-half of the land purchased by the said defendant from Samuel McD. Reed, agent for Magdaline Reed, supposed to contain —— acres, and by subsequent survey found to contain 1,020 acres, and that the defendant, L'Hommedieu, and Isaac H. Abbott agreed upon a division of said land, giving unto Isaac H. Abbott 509 acres as his portion out of the said survey of 1,020 acres." The commissioner reports:

"2d. It appearing by said contract that there was a settlement between Isaac H. Abbott and said L'Hommedieu up to the 11th day of December, 1858, whereupon said Isaac H. Abbott executed to the defendant his bond for $464.00, that being the balance then due to the defendant, I take this as the basis of this settlement for balance due.

The commissioner then proceeds thus, to-wit:

"Bond executed by I. H. Abbott to Charles L'Hommedieu,
    11th December, 1858, consideration in title bond..........$464 00
Interest on same from September 5, 1853, to July 1, 1859... 162 09
                                                              ─────────
                                                              $626 09
Subject to credit, July 1, 1859...........................  $200 00
Taxes paid by I. H. Abbott on whole tract for
    the years 1858 and 1859, $26 23; Abbott's
    one-half..............................................  13 10½–$213 09½
                                                              ─────────
                                                              $412 87½

Interest on same from July 1, 1859, to March 1, 1860...... 33 02½

$446 00

Taxes paid by Abbott for 1860, $20 00; Abbott's
one-half.............................................................$ 10 00
Credit on title bond, November 1, 1860............... 71 83—$ 82 83

$ 363 17

Interest on same from November 1, 1860, to March 1, 1865.. 108 95

$ 472 12

By taxes by Abbott for the years 1861, 1862, 1863, 1864 and
1865, $58 86; Abbott's one-half.................... 29 43

$ 442 69

Interest on same from November 1, 1865, to November 1,
1866 ...................................................... 26 56

$ 469 25

By taxes paid by Abbott for 1866, $33 06; Abbott's one-half 16 53

$ 452 72

Interest on same from November 1, 1866, to November 1,
1867.................................................... 27 16

$ 479 88

By taxes paid by Abbott for the year 1867, $41 99; Ab-
bott's one-half........................................ 20 99

$ 458 89

Interest on same from November 1, 1867, to November 1,
1868 .................................................. 27 53

$ 486 42

By taxes paid by Abbott for 1868, $42 79; Abbott's one-half 21 39

$ 465 03

Interest on same from November 1, 1868, to November 1,
1869 .................................................. 27 90

$ 492 93

By taxes paid by Abbott for 1869, $20 95 : Abbott's one-half 10 47

$ 482 46

Interest on same from November 1, 1869, to November 1,
1870............................................... 28 94

$ 511 40

Taxes paid by Abbott for 1870, $28 03; Abbott's one-half—
taxes refunded by Board Supervisors to C. L'Homme-
dieu, defendant, for the years 1861, 1862, 1863 and 1864,
$43 61; Abbott's one-half $21 80 (see order Board Su-
pervisors, marked P, herewith filed)...................... 35 81

$ 475 59

Interest on same from November 1, 1870, to November 1, 1871.................................................................. 28 53

$ 504 12

"Showing a balance due upon bond executed by Isaac H. Abbott to defendant, with interest thereon to November 1, 1871, amounting to $504.12.

3d. And that on or from the 1st to 25th May, 1871, the defendant conveyed to one J. S. Davis 12 acres of land out of the boundary contracted to be conveyed to I. H. Abbott by said title bond, and for which he received the sum of $10.00 per acre, amounting in all to $120. And that in the latter part of the spring, or early part of the summer, of 1873, the defendant conveyed out of said boundary to George A. Burnside and Stephen Arthur, 4 acres of land, for the sum of $100, and as your commissioner cannot get the date of the sale of said land to said Davis and others, interest is brought up to November 1, 1871, on the balance due the defendant upon the land. The above amount found due November 1, 1871, is subject to a credit of $120.00, May or June, 1861, and also a credit of $100.00, May or June, 1873.

To balance as above due November 1, 1871.......................$504 12
Credit by land sold to J. S. Davis.................................... 120 00

$384 12
Interest on same from November 1, 1871, to June 1, 1873.... 36 48

$420 60
Credit by land sold Burnside............................................ 100 00

Showing a balance due defendant up to June 1, 1873.........$320 60

The commissioner reports also that of the land agreed to be sold by the defendant L'Hommedieu, to said Isaac H. Abbott, the defendant has sold and conveyed, since the date of said contract, to other persons the two parcels stated in number three of his report. And he also reports, that on the 17th day of August, 1867, Isaac H. Abbott assigned to the plaintiff, the title bond filed and referred to, for, and in consideration of the sum of $1,500. Several exceptions were filed to this report by the counsel of defendant L'Hommedieu, which it is un-

necessary to notice at this place. On the 4th day of April, 1874, the cause came on to be heard upon the papers formerly read therein, together with the report of commissioner G. M. Blume, depositions taken by the commissioner and exceptions taken to said report and also depositions of defendant. And the court being of opinion that the commissioner erred in closing said depositions, and basing his account thoreon, without compelling the deponents to answer proper questions, adjudged, ordered and decreed that the cause be again referred to the commissioner, who was directed to hear such further evidence as either party should produce, requiring the witnesses to answer all proper questions, and excluding all improper questions from the witnesses if any should be propounded, and to report specially upon the matters referred to him by the former decree of reference, and also upon any proper question or matters in which either party should require a report on what are raised by the pleadings, and that he might take the depositions of witnesses who declined fully to answer. The said commissioner made another report in pursuance of the last named decree, in which he says: "During the taking of said account and report, both parties were present in person, and represented by counsel. All the witnesses who had previously refused to testify, were recalled and required to answer the questions formerly propounded, and examined to the full satisfaction of both parties. The depositions of all other witnesses produced by either party were taken by me, and all the testimony thus taken, is herewith returned as a part of this report. After both parties had produced before me all evidence they desired, and announced that they had closed this case, I proceeded to re-examine the case upon all the evidence before me, and upon such examination find no reason to change or modify the conclusion at which I arrived in my former report. I, therefore, adopt and make said report a part of this, and respectfully refer the court to that report for my decision upon the ques-

tions referred to me. Exceptions were filed to this report by the counsel of defendent, L'Hommedieu. A large number of depositions were taken in the cause, many by the commissioner and some by others. To some of the depositions taken by each party, exceptions were filed. The depositions and exceptions thereto will be hereinafter considered, so far as deemed material or necessary. On the 7th day of April, 1875, the cause again came on to be heard and the court rendered a decree therein as follows, viz :

"I. H. Abbott was this day made a party defendent, to this suit, and thereupon appeared and filed his answer to which the plaintiff replies generally. And this cause came on this day to be heard upon the plaintiff's bill, answer of defendant L'Hommedieu, answer of I. H. Abbott, plaintiff's replications to said answers, exhibits filed, depositions and exceptions thereto, reports of commissioner G. M. Blume, and exceptions thereto, and orders heretofore entered, and upon arguments of counsel. Upon consideration whereof, and plaintiff having withdrawn all his exceptions, the exceptions to the deposition of Bahlman is overruled, and all the other exceptions taken by defendant to depositions are sustained. And the court is of the opinion that the plaintiff, L. L. Abbott, as the assignee of the defendant, I. H. Abbott, is entitled to a specific execution of said contract, and to a conveyance from defendant Charles L'Hommedieu of the legal 'title to the tract of land of five hundred and nine acres in the bill and proceedings mentioned, except the one acre sold to G. A. Burnside, and the twelve acres sold to Davis, upon the payment to the defendant, Charles L'Hommedieu, of the balance of the purchase money; but to ascertain what that balance is, this cause is again referred to commissioner G. M. Blume, without passing upon the exceptions taken to his report, and said commissioner is directed to ascertain and report said balance of said purchase money still due and unpaid on said tract of land, together with such other

matters specially stated, touching said balance as he may deem pertinent or any party requires."

The defendant, Isaac H. Abbott, in his answer says that it is true as stated in the bill, that he and his co-defendant purchased the tract of land in the bill mentioned of S. McD. Reed, agent, &c.; that they afterwards made the partition of the tract as charged and that they then made a settlement of their just indebtedness up to that time, and they held in severalty ever after, each claiming up to that partition line and occupying up to that line, and no further; that he sold his said land to his son, the plaintiff, and transferred the benefit of his title to him, who has held and claimed the same ever since. He also admits that the said sale to plaintiff was made for a fair and full consideration without fraud, and the consideration has been paid. He also admits the facts generally to be true as charged in the bill. The commissioner made his report to the court in pursuance of said last named decree, and ascertains the balance due the defendant L'Hommedieu, on the first day of September, 1875, for said lands to be $284.46½. This report is made up in a good dergee of the same items as his first reports, if not entirely so, although he ascertains the balance due to be, less than in the former reports. To this report of the commissioner, the defendant L'Hommedieu, filed several exceptions as follows, to-wit: 1st. Because the commissioner did not allow said defendant credit for note bearing date on 1st May, 1840; 2d. Because he does not credit for horse of said L'Hommedieu, taken off by Abbott; 3d. Because he did not allow credit for amount loaned August 20th, 1862; 4th. Because he does not allow credit for interest of defendant in tobacco crop.

On the 5th day of April, 1876, the cause was again heard by the court and a decree rendered therein as follows:

"This day this cause came on again to be further heard upon the papers formerly filed, and the proceedings for-

merly had therein ; also on the third report of commissioner G. M. Blume made in this cause, and filed in the office of the clerk of this court, on the 12th day of August, 1875, and the several exceptions endorsed on said report by the defendant, L'Hommedieu, and was argued by counsel. Upon consideration, the court is of opinion to, and doth accordingly, overrule the said exceptions, and each of them, and doth approve and confirm said report. And being further of opinion that on the payment of the sum of $284.46, with interest thereon from Sept., 1, 1875, until paid, which is the amount due from complainant to the defendant, L'Hommedieu, on the contract between said defendant and Isaac H. Abbott, set out in the bill and proceedings herein, which sum has heretofore been tendered by complainant to said defendant, but which was refused, the complainant is entitled to a deed for the land in said contract described, it is adjudged, ordered and decreed that James H. Nash, who is hereby appointed a special commissioner for that purpose, do, on the payment to him of the sum aforesaid, with interest as aforesaid, execute and deliver for record to the complainant in this cause an apt and proper deed, conveying to the said complainant the land and estate which by the terms of the contract between Charles L'Hommedieu, and Isaac H. Abbott, described in the bill, the said L'Hommedieu agreed to convey to said Abbott; but said L'Hommedieu may execute said deed in person, if he do the same within the next thirty days. And it is further decreed that out of the said sum of money the said Nash shall retain $5.00 as an allowance for making said deed, if he execute the same, and the balance he shall apply—first, in payment of the costs of this suit, including an atlowance of $20.00 to complainant's attorney, and the residue he shall pay to the defendant, L'Hommedieu, or his attorney. Before receiving any money under this decree, the commissioner shall give bond in the penalty of $400 before the clerk of this court, with condition according to law."

From the said decrees rendered in this cause on the 7th day of April, 1875, and the 5th day of April, 1876, the defendant, Charles L'Hommedieu, obtained an appeal from this Court. And it must now be determined upon review of the cause whether there is such error in the said decrees or either of them, as to authorize this Court to reverse the same. The appellant assigned error in the said decrees of the court as follows, to-wit:

"The Court should have refused a specific execution of the contract of sale made December 11, 1858, because—

"1. The plaintiff and his father, Isaac H. Abbott, had for fifteen years neglected and refused to execute said contract on their part, or offer to do so.

"2. Isaac H. Abbott, the vendee, having become utterly insolvent as early as 1862, the contract ceased to be mutual. After this time it could not have been enforced by the defendant, and therefore, a court will not compel its execution for an assignee of the vendee, especially after such great delay, and when the land has enhanced to twice its value at the time of the sale.

"3. The vendee, Isaac H. Abbott, voluntarily abandoned and cancelled the contract. Had it not been for this abandonment the defendant would have allowed the land to go to sale under the decree in favor of M. Harvey, and purchased it for the balance due under the agreement with Abbott, of June 23, 1870, but upon the faith of said cancellation of the purchase, the defendant prevented said sale to his own prejudice. To allow Abbott or his assignee to repudiate this agreement, would be to reward him for his own fraud.

"The court should have required the plaintiff or his assignor to pay the account due the defendant, as well as the balance due on the land purchased. The said account was created upon the faith of said bond as security, and the defendant desisted from suing upon the solemn agreement of the said Isaac H. Abbott that the land should be the property of the defendant. The said Ab-

bott is now insolvent, and said account barred by the statute of limitations.

"The Court should have sustained the second exception to the deposition of the witness, W. F. Bahlman, upon the ground that there was no affidavit filed of his non-residence."

For the sake of convenience I will consider the third assignment of error made by the appellant, before considering the others. This assignment presents an interesting question in practice, and one, it must be admitted, is not devoid of difficulty, owing to the language employed in the 34th section of chapter 130 of the Code, and a manifest intent in the Legislature by that section and the 33d section of same chapter, to change the law upon the subject, as it existed for a long time previous, and as contained in the Code of Virginia, of 1860, in section 30, chapter 176 thereof. The 30th section of chapter 176 of said Code of 1860, so far as it relates to the subject under consideration, provides as follows: "On affidavit that a witness resides out of the state, or is out of it, in the service thereof, or of the United States, a commission to take his deposition may be issued by the clerk of the court wherein the case is pending, directed, if the deposition is to be taken out of this state, but within the United States, to any commissioner appointed by the governor of this state, or to any justice or notary public of the state wherein the witness may be, and directed, if the deposition is to be taken in a foreign country, to such commissioner or commissioners as may be agreed upon by the parties or appointed by the court, or if there be none such, &c., * * any person, or persons, to whom a commission is so directed may administer an oath to the witness, and take and certify the deposition with his official seal annexed; and if he has none, then the genuineness of his signature shall be authenticated by some officer of the same state or country, under his official seal, unless the deposition is taken by a justice out of this state but in the United States, in which case his certifi-

cate shall be received without any seal annexed, or oth-
er authentication of his signature." The 31st section of
said chapter 176, provides that : " Reasonable notice shall
be given to the adverse party of the time and place of
taking every deposition." And the 28th section of same
chapter provides, that : " In any suit an affidavit that a
witness or party resides out of this state, or is out of it,
shall be *prima facie* evidence of the fact, although such
affidavit be made by a party, and without previous
notice." The 32d section of chapter 130 of the Code of
1868, is identical in substance and language with said
section 28 of chapter 176 of the said Code of 1860. The
33d section of chapter 130 of the code of 1868, is as
follows : " In any pending case the deposition of a wit-
ness, whether a party to the suit or not, may, without
any commission, be taken in or out of the state, by a
justice or notary public, or by a commissioner in chan-
cery ; and if certified under his hand may be received
without proof of the signature of such certificate." And
the 34th section of said chapter 130, provides, that : " on
affidavit that a witness resides out of this state, or is out
of it in the service thereof, or of the United States, his
deposition may be taken by or before any commissioner
appointed by the governor of this state, or any justice,
notary public or other officer authorized to take deposi-
tions in the state wherein the witness may be, or if the
deposition is to be taken in a foreign country, &c. * *
Any person, or persons, taking such deposition may ad-
minister an oath to the witness, and take and certify the
deposition with his official seal annexed ; and if he has
none, the genuineness of his signature shall be authenti-
cated by some officer of the same state or country, under
his official seal, unless the deposition is taken by a jus-
tice out of this state, but in the United States, in which
case his certificate shall be received without any seal an-
nexed, or any other authentication of his signature."
The 35th section of same chapter provides, that " Rea-
sonable notice shall be given to the adverse party of the

time and place of taking every deposition." Under the provisions of the Code of 1860, section 30, chapter 176, the deposition of a witness "who resides out of the state, or is out of it, &c.," could be taken by virtue of a commission issued by the clerk of the court wherein the case is pending, directed, if the deposition is to be taken out of this state, but within the United States, to any commissioner appointed by the governor of this state, or to any justice or notary public of the state wherein the witness may be, &c. The commission, under this section, is the authority for the officer to whom directed to take the deposition, and the affidavit required is necessary to authorize the clerk to issue the commission. The required affidavit might be made without notice to the adverse party, and so the commission might issue without said notice, under the 28th and 30th sections. But the 31st section, reqires that reasonable notice shall be given to the adverse party of the time and place of taking the deposition. The 33d and 34th sections of the 130th chapter of the Code of 1868, by dispensing with a commission also dispenses with the necessity of the affidavit required by the 30th section of chapter 176 of the Code of 1860, except, perhaps, so far as such affidavit might be *prima facie* evidence that the witness resides out of this state, or is out of it, in the service of the state, &c, at the time his deposition was taken. Section 32 and 36, chapter 130, Code of 1868, sections 28 and 32, chapter 176, Code of 1860. Section 34 of chapter 130 of the Code of 1868, does not designate or require that the affidavit therein named shall be filed in the clerk's office of the court in which the case is pending, or any other place, before the deposition of the witness is taken; nor is it required that the adverse party shall have previous or any notice of the time or place of making the affidavit, or any notice whatever in relation thereto. What, then, was the reason, intent and purpose of the Legislature in providing for an affidavit at all, in said 34th section? It seems to me that it was intended, that there shall

be at least *prima facie* evidence, ordinarily, that
the witness resided out of the state, or is out of it,
in the service of the state, &c., at the time the deposi
tion is taken, before the deposition can be read as ev-
idence, if objected to. This affidavit may be made by a
party to the suit. If it does not mean this, then it
seems to me that it is meaningless, and was retained in
the said 34th section inadvertently or by mistake. If,
then, the object and intent of the Legislature was as I
have suggested in this respect, that object and purpose
is attained just as well by the deposition of the witness,
if it prove the fact that the witness resides out of the
state, or is out of it, in the service of the state, &c., at the
time his deposition is taken, as by an affidavit, and in fact
is more satisfactory, because the deposition is required to
be taken on reasonable notice of time and place of tak-
ing the same to the adverse party. I am of opinion for
the reasons stated, that the true purpose and intent of
said 34th section, in providing for an affidavit, is com-
plied with if it appears by the deposition of the witness
whose deposition is taken, or other evidence that the wit-
ness resided out of the state, or was out of it, in the ser-
vice, &c., at the time the deposition was taken.
Perhaps the party objecting to the reading of the depo-
sition should be permitted to show, in support of his ob-
jection by evidence to the court, that the witness, whose
deposition is offered, did not in fact *reside* out of the state
at the time his deposition was taken, or went out of the
state for the purpose of having his deposition taken, &c.
But as these questions do not arise in this case, I do not
give any opinion upon that subject. The exceptions
filed by the counsel of L'Hommedieu to the deposition
of William F. Bahlman are: 1st, No sufficient notice was
given. 2d. The notarial certificate of the taking
thereof is not sufficient. 3d. The evidence is immate-
rial. And lastly. Because the deposition was taken
without any affidavit of the non-residency of the witness.
No insufficiency in the notice, or the certificate of the tak-

1877.
January Term.

Abbott
v.
L'Hommedieu.

ing of the deposition, has been brought to our attention, and I see none of a substantial nature. The evidence contained in the deposition is clearly not immaterial. Said witness, William F. Bahlman, deposes in his said deposition that he is thirty-seven years of age, that he resides in the city of Lexington, county of Lafayette, and state of Missouri, and that he is employed as principal of the high school in said city of Lexington. Under the views stated above, I am of opinion that the circuit court did not err in overruling the exceptions of the defendant, L'Hommedieu's counsel filed in the cause to the reading of said deposition, and that the appellant's third and last assignment of error is not well taken.

I will now proceed to consider the appellant's first assignment of error, which seems to be divided into three devisions. Before considering the facts disclosed by the record in this cause, I deem it proper to ascertain and state, at least, some of the settled law which governs courts of equity with us in compelling the specific execution of contracts for the sale of land. The exercise of this whole branch of equity jurisprudence, respecting the recision and specific performance of contracts is not a matter of right in either party, but it is a matter of discretion in the court; not, indeed, of arbitrary or capricious discretion dependent upon the mere pleasure of the Judge, but of that sound and reasonble discretion which governs itself, as far as it may, by general rules and principles; but at the same time which grants or withholds relief according to the circumstance of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties. 2d vol. Story's Eq. Jur., §742, and authorities there cited, §693 and §769 of same book. "When, indeed, a contract respecting real property is, in its nature and circumstances, unobjectionable, it is as much a matter of course for courts of equity to decree a specific performance of it as it is for a court of law to give damages for a breach of it. And generally, it may be stated, the courts of equity will decree a spe-

cific performance when the contract is in writing, and is certain, and is fair in all its parts, and is for an adequate consideration, and is capable of being performed, but not otherwise." Same author and book, §751, and authorities there cited. *Hale v. Wikinson*, 21 Gratt., 75; see opinion of Judge Moncure, in this case at pages 83, 84; Story's Eq. Jur., §769, 770, and authorities there cited. It is quite manifest from the evidence in this cause that the said agreement between Isaac H. Abbott and the defendant, L'Hommedieu, of the 11th day of December, 1858, is not the first contract made between them in relation to one-half of the land purchased by L'Hommedieu of Samuel McD. Reed, agent of Magdeline Reed, in said agreement mentioned. For it seems that prior to 1852, and perhaps in 1851, the said L'Hommedieu sold to Isaac H. Abbott an undivided half of said land, purchased by L'Hommedieu from said Reed, and that the contract price was some $892.52, to be paid in equal installments, in September, 1852 and 1853, and that said Isaac H. Abbott did pay on said purchase money, in 1852, about $472, and perhaps a few cents more. And this doubtless accounts for the said agreement of the 11th of December, 1858, stating at its begining, "that we have this day agreed upon a division line through the tract of land which I, said L'Hommedieu, bought of Sam'l McD. Reed," &c. Thus it appears that there were, in fact, two contracts between said Isaac H. Abbott and L'Hommedieu, in relation to the land, and that the said contract made between them on the 11th of December, 1858, was the second contract and was made after they had agreed upon a division line between them as stated in said last named contract, and after said Isaac H. Abbott had paid a large amount of the purchase money, and that the $464.00 of purchase money in said last named contract mentioned, was, in fact, the balance of purchase money then due from Isaac H. Abbott to said L'Hommedieu, for that part, to-wit: the part north of said division line, which fell to said Isaac

H. Abbott on the said division and in said last named contract mentioned. It appears that on the said 11th day of December, 1858, the said Isaac H. Abbott made to L'Hommedieu his note for $464, the said balance of purchase money in said second contract mentioned, with interest from the 5th day of September, 1853, the time the last installments of purchase money became payable from Isaac H. Abbott to said L'Hommedieu under their first contract in relation to the land. It further appears that on the 1st day of July, 1859, Isaac H. Abbott paid on the said $464.00, and its interest, for which he gave his note to L'Hommedieu, the sum of $200.00; and also, on the 1st day of December, 1860, the further sum of $72.83. It further appears in this case, that Isaac H. Abbott and the plaintiff paid the taxes for a number of years on the whole of the said eight hundred and forty-eight acres of land, which amounted to a considerable sum of money, for which the commissioner allowed credit in his reports. It also appears by the said contract of the 11th of December, 1858, that the said division line in said contract mentioned was run out and marked by T. S. Robson, surveyor, on the 4th of July, 1857. I infer from the evidence that Isaac H. Abbott was residing on the land which fell to him on said division at the date of the contract of the 11th of December, 1858, and that he and his family have continued to reside thereon from that time to the present, with the exception of the time that they and L'Hommedieu were absent during the war. L'Hommedieu says, in his deposition first taken, that "in July the male portion of the family went to Montgomery county, Virginia, and returned in September; and in November, when General Floyd left Fayette county, we all, the male portion of the family, went to the east again, and when General Loring left the valley in 1862, the family went and remained during the war." Further on he says: "After the war we returned in August, 1865." L'Hommedieu in his an-

swer, does not deny the making of the assignment by Isaac H. Abbott, to the plaintiff, L. L. Abbott, but he denies that it was made at its date, but was in fact made long after its date, and after 1871, and he avers that it was made without consideration, and was made by said Isaac H., and accepted by the plaintiff to defraud him (L'Hommedieu). He also denies having any notice thereof until after it was recorded. The said L'Hommedieu does not controvert the allegation contained in plaintiff's bill, that he (plaintiff) had made a legal tender of the actual amount due on said purchase money to said L'Hommedieu, and that he has hitherto and still continues to refuse to receive and accept the same, nor does L'Hommedieu controvert the allegation in the bill that plaintiff is in possession of the land in question. These allegations must then, under the law, be taken for confessed for the purposes of this suit. William F. Bahlman in his deposition, swears that he has been acquainted with the plaintiff, L. L. Abbott, since the 4th day of May, 1855, and with said L'Hommedieu since the summer of 1857, or 1858, and with Isaac H. Abbott since May, 1855 ; that on the 17th day of August, 1867, he was at the residence of Isaac H. Abbott, on Laurel creek, in the county of Fayette, and state of West Virginia; and that on the said 17th day of August, 1867, and at the said place, "the said L. L. Abbott and Isaac H. Abbott were engaged in settling their business affairs, and at their request he drew up an assignment of a certain memorandum agreement, or title bond—a copy of which said agreement, or title bond, is hereto annexed, marked exhibit B; and a copy of which said assignment is also hereto annexed, marked exhibit A; that he drew up said assignment as aforesaid, and witnessed it on the day therein expressed. J. H. Abbott, a son of said Isaac H. Abbott, and a brother of the plaintiff, in his deposition swears that he was at his father's on the 17th day of August, 1867, and L. L. Abbott and Isaac H. Abbott, were settling up some accounts, and for the

amount of some $1,500.00 or $1,660.00 due to L. L. Abbott, upon said settlement Isaac H. Abbott executed to L. L. Abbott a title bond for five hundred and nine acres of land, where he then and now resides, it being the same land in controversy in this suit.   Isaac H. Abbott swears substantially that the consideration of the assignment by him to L. L. Abbott of the title bond, or contract aforesaid, was $1500.00, and that the transfer was made August 17th, 1867.   The plaintiff, in his deposition, swears that $1,500.00, was the consideration for the transfer from Isaac H. Abbott of the title bond filed in this cause, and the 17th day of August, 1867, was the time said transfer was made.   The said assignment on its face, purports to have been witnessed by W. F. Bahlman and J. H. Abbott.   Here then are four witnesses, who testify expressly to said assignment, on the day of its date, and three to the consideration of $1,500.00, therefor.   It is true that defendant, L'Hommedieu has filed the depositions of some twenty-five witnesses or more, whose evidence tend to prove that the general character of the said Abbott's for truth and veracity is bad, and that they are not to be relied on upon oath, where they are interested.   On the other hand, the plaintiff has filed the depositions of a number of witnesses (though not so many as defendant, L'Hommedieu) tending to prove that the general character of said Abbott's for truth and veracity is good, and that from such character they are entitled to credit upon oath.   But the defendant, L'Hommediueu has not succeeded in impeaching the character of the witness, Balhman for truth and veracity, or his title to credit upon oath.   And this witness in his deposition, strongly tends to corroberate and sustain the evidence of the said Abbotts in most material particulars. From the evidence touching said assignment in the bill mentioned, I feel bound to conclude that the said assignment from Isaac H. Abbott to the plaintiffs, L. L. Abbott, was made on the 17th day of August, 1867, and that it was made for a valuable consideration, but whether the

consideration was the full value of the land at that time, I do not feel able to determine; nor do I deem it material; nor do I feel authorized to determine that the full amount of the $1,500,00, consideration named in the assignment from Isaac H. Abbott to the plaintiff, has been fully paid by the plaintiff, or was paid at the date of the said assignment; I feel authorized to infer that at least so much of said $1,500.00, as was sufficient to pay the balance of purchase money due to the defendant, L'Hommedieu has not been paid. But under the view I take of this case it is immaterial whether the whole of said $1,500 has been paid or not. The defendant, L'Hommedieu, in order to avoid the ordinary force and effect of the said contract of the 11th day of December, 1858, and the said assignment thereof by Isaac H. Abbott to the plaintiff, avers and sets up in his answer, that " on the 19th day of February, 1871, said Isaac H. Abbott, having become hopelessly insolvent and wholly unable to pay respondent any part of the advances aforesaid, and unable to pay even the balance aforesaid of said bond, except by sale of the one-half of said eight hundred and forty-eight acre tract of land purchased by said Isaac H. Abbott, as aforesaid, the said Isaac H. Abbott declared his purpose to abandon his said purchase, and thereupon said respondent and said Isaac H. Abbott, to-wit: on the day and year last aforesaid, mutually agreed that said respondent should remit to and abandon in favor of said Isaac H., all claim upon the bond aforesaid, and all claim and demand for and upon said account of $1,635.60, and that said Isaac H. should surrender and remit to said respondant all claim upon said one-half of the tract of eight hundred and forty-eight acres of land aforesaid, and that said Isaac H. should deliver to said respondent the title bond in said bill mentioned, and that said respondent should deliver said account and $464.00 bond to to said Isaac H.; said title bond and $464.00 bond and $1,665.60 account were never delivered, but said respondent, relying upon the last mentioned agreement, forebore

<div align="right">
1877.
January Term.

Abbott
v.
L'Hommedieu.
</div>

89

to sue upon the $464.00 bond aforesaid, as well as upon the account of $1,635.60, until the latter would be barred by the statute of limitations, in any suit that could now be brought for it." And he further avers that he had no notice of said assignment to said plaintiff until sometime after said assignment was admitted to record in the recorder's office, and that said assignment, under the circumstances, cannot effect the parol contract and recision made between him and said Isaac H., as aforesaid, to his prejudice in a court of equity. Story, in his work on equity jurisprudence, §770, 2d vol., says: "But courts of equity do not stop here, for they will let in the defendant to defend himself by evidence to resist a decree, when the plaintiff would not always be permitted to establish his case by the like evidence. Thus for instance, courts of equity will allow the defendant to show, that, by fraud, accident, or mistake, the thing bought is different from what he intended; or that material terms have been omitted in the written agreement; or that there has been a violation of it by parol; or that there has been a parol discharge of a written contract. The ground of this doctrine is that which has been already alluded to, that courts of equity ought not to be active in enforcing claims, which are not under the actual circumstances, just as between the parties." It must be borne in mind that the defendant, L'Hommedieu, says in his answer that "the claim against respondent for said eight hundred and forty-eight acres of land was transferred to Morris Harvey, and he brought suit against respondent, and said Isaac H. Abbott. Respondent was then very much embarrassed financially, growing in great part, out of the advances aforesaid, and he complained to said Isaac H. and threatened to sue upon the $464.00, bond aforesaid, and compel payment thereof, and thereupon said Isaac H. made and signed a certain writing, bearing date the 8th day of June, 1870, and now to the court here shown, whereby he agreed that if he should not pay the balance of said bond before the said eight hundred and forty-

eight acres should be legally brought to sale, then so much of said one-half of said eight hundred and forty-eight acres should be sold as should be necessary to pay the balance aforesaid upon the bond aforesaid, as well as one-half the costs of said suit." By reference to the said writing referred to above, which I have hereinbefore incorporated into this opinion, it will be seen that the true date of said writing is the 23d day of June, 1870. Here the defendant, L'Hommedien, clearly shows, in my judgment, that neither he nor the said Isaac H. considered the said contract of December 11, 1858, as being abandoned. And as in the said writing of June, 23, the said Isaac H. says : " And as the said Charles L'Hommedieu has since sold to me a part of the land, and holds my bond for the purchase money, and would have brought suit at the August term for the payment of said bond, this is to certify that to avoid the expenses of suit should the said bond, held by L'Hommedieu, not be satisfied by the time the land is brought to sale, I agree that a portion of my land shall be sold, sufficient to pay the balance due on said bond, and half the cost that may accrue by the action taken by the said Morris Harvey," it is clear to my mind that neither said L'Hommedieu, nor the said Isaac H., at the date of said writing, contemplated an abandonment or recision of said contract of the 11th day of December, 1858, but, only if the bond of the said Isaac H. to said L'Hommedieu, should not be satisfied by the time the whole land, that is the eight hundred and forty-eight acres, should be brought to sale. that a portion of the said land sold to said Isaac H., should be sold, sufficient to pay the balance due on his purchase money bond, and one-half the cost that should or might accrue in the Harvey suit. It also seems to me, that from the terms of said writing of June 23d, 1870, that it is fairly inferable that it was comtemplated by said L'Hommedieu and Isaac H., that if the said eight hundred and forty-eight acres of land was brought to sale in said Harvey suit, that defendant, L'Hommedieu,

should, or would purchase the same, and that then the said L'Hommedieu might sell a sufficient amount of the land sold by him to said Isaac H., to pay the balance of the purchase money due on said $464.00 bond, and one-half of the cost of said Harvey suit; and this may account for sales of said land by surveyor Robson, who seemed to be acting for the parties after the said 23d day of June, 1870, and also after the 19th day of February, 1871, L'Hommedieu in his first deposition, says "on the 19th day of February, 1871, one day before the sitting of the circuit court, at which time the land was to be sold, Mr. Robson went as my agent to see Mr. Abbott, with instructions if he did not get the title bond, to notify Mr. Abbott that I would have him summoned next morning before Judge Gilles-pie to testify in open court to the assurances he had given that he had no claim on the land; he said he would send the title bond, but he did not have it, but he would go before the court and testify to said facts, that he had nothing to do with the land; he also said that I had let him have more money than he had ever let me have; I had done more for him than the boys had done; the boys had acted very badly, and he never intended they should have anything to do with the land; he said he was not very well, but if I insisted, he would go." It is evident that L'Hommedieu is not here stating a conversation between himself and said Isaac H., but what said Isaac H., said to his agent Robson, in his absence, and what said Robson reported to him, said Isaac H. said. But the defendant, L'Hommedieu, before giving his deposition, took the deposition of his said agent, Robson, and attempted to prove what he (L'Hommedieu) stated as above, and he asked said Robson this question: "Please state whether, or not, you at any time was requested by the defendant to go to I. H. Abbott and have him, Abbott, relinquish all his claim to the land in controversy. State the time and all the circumstances attending the whole transaction in regard

to Abbott's giving up the title papers and claim to said land." To this question said Robson made this answer: "At the request of defendant, I went to see I. H. Abbott a few days before the sale of the land, relative to making some arrangements as to how the debt against the land should be paid. Mr. Abbott stated to me that the boys, his sons, had told him they would try and send the money before the day of sale, and that they ought to have done it. He told me further, that Lent L. Abbott had all the papers, and that he could do nothing unless he came to attend to it, and if they did not send the money, he knew no other way but to sell the land, as he had nothing to do with it; and never having read any of the papers, receipts or transfers, or anything relative to the whole transaction, except the title bond from defendant, L'Hommedieu, to I. H. Abbott, which I wrote myself, and having no knowledge of the said title bond having been transferred to L. L. Abbott, I may have told the defendant that I understood from the said I. H. Abbott's talk to me, that he was willing to give up the land to him to do what he thought best with it in case L. L. Abbott or his sons did not come forward on or before the day of sale, to satisfy the debt against it." Thus, it appears by the plaintiff's witness, Robson, that said Isaac H. did not state to him what L'Hommedieu says in his deposition Robson stated to him said Isaac H. said to him (Robson), and the said Robison says he went to see said Isaac H. for L'Hommedieu, relative to making some arrangements as to how the debt against the land should be paid, but he does not state he went for the purpose which L'Hommedieu says he sent him. It seems that after February, 1871, and in the year 1871, the said L'Hommedieu conveyed to one J. S. Davis, twelve acres of land within the boundary contracted to be conveyed to I. H. Abbott, for which he received $10.00 per acre, amounting to $120.00, the said twelve acres being part of a larger tract conveyed by said L'Hommedieu to said Davis; and that some time

1877.
January Term.

Abbott
v.
L'Hommedieu.

in the year 1873, or recently before that year, he, L'Hommedieu, also sold or conveyed a small parcel of the land in controversy, to George A. Burnside and Stephen Arthur, for which he, L'Hommedieu, received $100.00. And it appears by the deposition of said T. S. Robson, taken by plaintiff, that the commissioner, after the defendant, L'Hommedieu, had concluded his examination of the witness, asked the said Robson this question : "State, if you know any and what agreement or understanding was between the parties about the land sold off to Davis and Burnside ; how was this to be settled, or accounted for between the parties? Also state the date of any such conversation between the parties?" To which question the said Robson made answer as follows: " I know of no understanding made when both parties were present together with me, but each left it to me to run off the land in selling, so as not to injure the sale of what might be left on either side of the division line. I supposed and understood that the purchase money would be divided in proportion to the land claimed by each, or they could so arrange it as to exchange land, yet unsold, so as to suit each party. I don't remember the date, but it was about the time that James and John Little bought the land, they bought the land of defendant, which was before the sale and on up to the sale to Burnside and Arthur." Burnside in his deposition, was asked by the commissioner this question: "Was you notified by I. H. Abbott that the plaintiff, L. L. Abbott, was the owner of the land," to which he made answer: " It was before I purchased the mill seat; we did not know what to do, both parties claiming the land; we went to Mr. Robson for information; he told me I was to buy of L'Hommedieu ; it seems from the run of the discourse between the parties, that the money to be paid for the mill seat was to go to Mr. L'Hommedieu to pay or finish paying the purchase money." It does not clearly appear that L'Hommedieu had notice of the said assignment from said Isaac H. to plaintiff, until about the time it was

admitted to record. It will be seen that defendant,
L'Hommedieu, filed with his answer an account speci-
fying the items, of which the $1,635.60 is made up, from
which and his own evidence, it seems that all the items
of that account, except the amount of purchase money
due from Isaac H. Abbott and the one-half of costs of suit,
and the $100.00 for one-third of tobacco crop, were barred
by the statute of limitations long prior to the year 1871.
And it seems to me from his own deposition if he has a just
claim on any person for said $100.00 for tobacco it is
against Joel Abbott, and not against Isaac H. Abbott,
or the plaintiff. Upon the whole without specifying fur-
ther, after examining and considering the evidence, I
don't think the defendant L'Hommedieu, has satisfac-
torily established his defense as to the abandonment or
recision of said contract as set up in his answer. I by
no means feel authorized to hold from the evidence that
said contract of 11th day of December, 1858, ever was
abandoned or rescinded by I. H. Abbott, either before
or after the assignment thereof by plaintiff. This case
can in no wise be assimilated to the case of *Bowles v.
Woodson,* 6 Gratt., 78, cited by appellant's counsel, which
may readily be seen by referring to the statement of the
case contained in the report. It is true that Judge Story,
in the 2d vol. of his Eq. Jur., §771, says: "In general,
it may be stated, that to entitle a party to a specific per-
formance, he must show that he has been in no default
in not having performed the agreement, and that he has
taken all proper steps towards the performance on his
own part. If he has been guilty of gross laches, or if
he applies for relief after a long lapse of time, unex-
plained by equitable circumstances, his bill will be dis-
missed, for courts of equity do not, any more than courts
of law administer relief to the gross negligence of sui-
tors." But in the same paragraph he further says,
"but this doctrine is to be taken (as we will pres-
ently see), with some qualifications. For, although
courts of equity will not encourage laches; yet, if there

has not been a strict legal compliance with the terms of the contract, and the non-compliance does not go to the essence of the contract, relief will be granted." "Equity follows the law in holding that time does not run against one who is in possession in the exercise or assertion of a right, and hence a vendee who enters upon land and holds the land with vendor's consent and acquiescence will not be barred by the mere lapse of time, nor until he is put in default by a notice to surrender the premises or pay the price. *DuBois v. Baum*, 10 Wright, 537; *Williams v. Staake*, 2, B. Monroe, 196; *Schmidt v. Livingstone*, 3 Edw., 213; *Ely v. McKay*, 12 Allen." White and Tudor's Leading Cases in Equity, part 2, vol. 2., 4th Amer. Ed., page 1137. In same vol. page 1135, it is said:

" A contract cannot be rescinded by one party, nor without the mutual consent which gave rise to the obligation, where nevertheless a purchaser or vendor is so far in default as to have lost the legal right to enforce the agreement, justice requires that the opposite party should have the privilege of naming a reasonable time within which, if the agreement be not fulfilled, all right under it shall cease. This modification is of comparatively recent growth, and reduces the doctrine that time is not of the essence of the contract to the reasonable proportions, which are not inconsistent with the justice that should not be lost sight of in administering equity; *Remmington v. Kelly*, 7 Ohio, 432; *Kirby v. Harrison*, 2 Ohio N. S., 326, 332; *Brasher v. Gratz*, 6 Wheat., 528; *Jackson v. Ligon*, 3 Leigh, 161; *Wisnell v. McGowan*, 1 Hoffman, Ch. 125; *Thompson v. Dulles*, 5 Richardson's Eq. 370; *Smith v. Lawrence*, 65 Mich., 489; *Hatch v. Cobb*, 4 Johnson, Ch. 559." In same book, page 1,056, it is said, " if one of two parties, concerned in a contract respecting lands, gives the other notice that he does not hold himself bound to perform, and will not perform the contract between them, and the other contracting party to whom the notice is given, makes no prompt assertion of his right to enforce the contract,

equity will consider him as acquiescing in the notice, and abandoning any equitable right he might have had to enforce the performance of the contract, and will leave the parties to their remedies and liabilities at law. *Guest v. Hemphrey*, 5 Ves., 818; *Heaphy v. Hill*, 2 S. & S., 29; *Watson v. Reid*, 1 Russ. & M., 236; *Walker v. Jeffreys*, 1 Hare, 341." Time is not ordinarily of the essence of a contract for the sale of land. It is clear to my mind that neither of the parties to the contract of the 11th day of December, 1858, regarded the prompt payment of the purchase money as of the essence of the contract. They certainly have not so stipulated. In the volume last cited, at page 1,110, it is said : "it results from the principle above stated, that as the immediate effect of the contract is to vest the ownership of the land in the vendee, and that of the purchase money in the vendor, so the right thus acquired will not be forfeited by a failure to execute a conveyance or pay the price at the appointed time, unless the circumstances or the terms employed are such as to take the case out of the general rule. In other words, the contract, although executory in form, is regarded by a chancellor as executed in fact, and consequently within the rule which would be applied at law if the vendor had given a deed." In the case of *DeCamp v. Feay*, 5 S. & R., Gilson, Judge, said : "Where time admits of compensation, as it perhaps always does where the lapse of it arises from money not having been paid at a particular day, it is never an essential part of the agreement." The plaintiff has offered to perform the contract of the 11th day of December, 1858, by tendering to defendant, L'Hommedieu, the full amount of the balance of said purchase money, before the commencement of this suit, but the defendant, L'Hommedieu, refused to receive the same and to execute a deed for the land, as clearly appears by the record before us. And the plaintiff avers that he is still ready and willing to pay said balance of of purchase money.

1877.
January Term.

Abbott
v.
L'Hommedieu.

For the foregoing reasons, after examination of the case, and considering the whole subject, it seems to me that the three divisions of the appellant's first assignment of error are each not well taken under the circumstances of this case and the authorities applicable thereto, and that they must each be overruled. The appellant's second assignment of error is not well taken for obvious reasons, and is fully covered by what has preceded. The appellant has filed some evidence showing that the land in question has, within the last few years, and between 1867 and the commencement of this suit, increased in value materially, because, in part at least, from the construction of the Chesapeake and Ohio railroad within a few miles of it. In *Williard v. Taylor*, 8 Wall., 558, 571, Field, Judge, observed: "The question in such cases always is, was the contract, at the time it was made, a reasonable and fair one? If such were the fact, the parties are considered as having taken on themselves the risk of subsequent fluctuations in the value of the property, and such fluctuations are not allowed to prevent its specific performance." *Cady v. Gale*, 5 W. Va. But see Fry on Specific Performance of Contracts, 2d American ed., §252, 256. I have considered all the questions covered by the appellant's assignment of error contained in his petition, suggested in the brief of the appellant's counsel, or suggested in argument, and it seems to me that neither of the errors assigned are well taken or well grounded.

But it appears that the defendant, L'Hommedieu, in 1871, sold, and perhaps conveyed, then or afterwards, to one John S. Davis a boundary of land, including about twelve acres of the land embraced by the contract or agreement of said L'Hommedieu and Isaac H. Abbott, dated the 11th day of December, 1858, at the price of $10.00 per acre, or, in other words, about twelve acres of said tract or boundary so sold by L'Hommedieu to said Davis, lies on the north side of the division line in said contract or agreement. (See printed record

of this case, deposition of T. S. Robson, p. 28; deposition of defendant, L'Hommedieu, pp. 50, 115 and 116; first report of commissioner Blume, pp. 60, 61; also last report of same commissioner, p. 126.) It also appears that defendant, L'Hommedieu, in 1872, sold, and perhaps then or thereafter conveyed, to George A. Burnside and Stephen Arthur, about three or four acres of the land, including a mill seat, embraced by the said contract or agreement of the 11th of December, 1858, and on the north side of said division line, at the price of $100.00. (See same pages of printed record last above referred to.) The purchase money for these parcels of land seems to have been paid or arranged by said purchasers to or with said defendant, L'Hommedieu, which, in the aggregate amounts to $220.00, exclusive of interest, and it will be seen by reference to the last report made in the cause by said commissioner Blume, at pages 126, 127, of printed record, that the plaintiff was allowed, and received a credit upon the purchase money due defendant, L'Hommedieu, upon the land in controversy, for the amounts, and interest thereon, received by said L'Hommedieu for the purchase money for said two parcels of said land so sold to said Davis, Burnside, and Arthur. And that the sum of $284.46½, with interest thereon from September 1, 1875, until paid, which the court, by its decree of the 5th day of April, 1876, ascertained to be the amount due said L'Hommedieu, on the 11th of December, 1858, aforesaid, is the balance of said purchase money due upon said contract, after deducting, among other credits, the price for which said L'Hommedieu sold said two several small parcels of land to said Davis, Burnside and Arthur. It will also be seen by reference to the decree of the court of the 7th day of April, 1875, rendered in this cause, that among other things said decree declares: " And the court is of opinion that the plaintiff, L. L. Abbott, as the assignee of the defendant, I. H. Abbott, is entitled to a specific execution of said contract, and to a conveyance from

defendant, Charles L'Hommedieu, of the legal title to the tract of land of five hundred and nine acres in the bill and proceedings mentioned, except the one acre sold to G. A. Burnside, and the twelve acres sold to Davis, upon the payment to the defendant, Charles L'Hommedieu, of the balance of the purchase money," &c. The exception made as above as to the one acre sold to G. A. Burnside, is not accurate, but should have been and should now be corrected by this court, so as to read, "except the parcel of three or four acres of land sold to G. A. Burnside and Stephen Arthur, and the twelve acres sold to John S. Davis," &c. It will be seen by reference to the said decree of the 5th of April, 1876, that the court in that decree ascertains and determines that on the payment of $284.46, with interest from September, 1875, the balance of purchase money due defendant, L'Hommedieu, the plaintiff is entitled to a specific execution of said contract in the bill and proceedings mentioned, and directs that the special commissioner appointed for the purpose " do, on the payment to him of the sum aforesaid, with interest as aforesaid, execute and deliver for record to the complainant in this cause an apt and proper deed, conveying to the said complainant the land and estate which by the terms of the contract between Charles L'Hommedieu and Isaac H. Abbott, described in the bill, the said L'Hommedieu agreed to convey to said Abbott." There is an error in this decree in not excepting from the direction to the commissioner to convey said land and estate to the complainant the twelve acres thereof sold by the defendant, L'Hommedieu, to John S. Davis, and the three or four acres thereof sold by said L'Hommedieu to George A. Burnside and Stephen Arthur, embracing a mill seat. This error in said last named decree should now be corrected by this Court, so that said two several parcels of land sold by said L'Hommedieu, as aforesaid, to the said John S. Davis, G. A. Burnside and Stephen Arthur, should be excepted from the conveyance directed in said last named

decree to be made to the complainant. These corrections of said decrees of the 7th of April, 1875, and 5th of April, 1876, might have been made by the court below upon notice, to thus correct them, and it is competent for this Court now to so correct said decrees in the respects above indicated, and to confirm the same as thus corrected. Entertaining these views and opinions for the reasons above stated, the said decrees of the circuit court of the county of Fayette, rendered in this cause, on the 7th day of April, 1875, and on the 5th day of April, 1876, must be corrected in the particulars and respects above indicated, and being so corrected they must each be affirmed with costs and $30.00 damages in favor of the appellees against the appellants.

DECREES AFFIRMED.