# Wheeling.

RADER. *et al. v.* NEAL, *et al.*

Decided July 6, 1878.

1. By Code, chap. 66, section 12, a married woman may sue and be sued in equity, without joining her husband in the suit, where the case concerns her separate property; a demurrer filed to a bill, for non-joinder of husband in a suit in chancery by wife, upon a matter concerning her separate property, should be overruled.

2. A case proper for a suit in chancery, to avoid multiplicity of suits; although a remedy at law existed. (See opinion of court.)

3. G. A. R, executed his bond May 3, 1861, to his brother, E. W. R. for $1,916.93, in which is incorporated the following: "It is understood, however, that I having sold to the said E. W. R. a tract of land purchased by me of C. A. N. for $1,500.00, (or thereabouts) and when I procure a good title from said N., and convey the same to E. W. R., the amount is to be deducted from this bond." Upon a bill filed by D. devisee of E. W. R. deceased, and J. G. R., his executor, it appeared, that G. A. R and said N. had exchanged lands, G. A. R. to have the "brush land," and N. to have three hundred and fifty acres on Meadow river; each was placed in possession; each, bound himself to make to the other a good title to the lands respectively; but they never passed deeds. G. A. R. died intestate leaving two infant sons. E. W. R. died the same day testate, leaving D. his devisee. D. after death of testator took possession of the "brush land," and remained there several years. D. filed her said bill alleging, that N. disclaimed ability to make deed to the ' brush land," as the title was in J. M. by conveyance from J. Z. N., in trust for the wife and children of N. ; but said D. alleged in her bill that at the time the deed was made to J. M. as trustee,

13  373
40   38
40  141

13  373
43  411

13  373
59  400

1878
June Term.

13  373
61  152

the "brush land" was in fact the property of N., though the legal title was outstanding in J. Z. N., who conveyed to J. M. at the instance of N., to hinder, delay and defraud creditors; and D. prayed the court to decree to her either the land, if bound to take it, or the $1,500.00, with interest. N., his wife and children answered the bill, tendered a deed for the land signed by all, and acknowledged by all except one, who was an infant, and offered to indemnify against the said infant. N. denied, that the deed to M. as trustee was made for any fraudulent purpose, and alleged, that the land was purchased and paid for by himself, and that J. Z. N., who held the legal title, conveyed to M. as said trustee, at his own instance, and without the concurrence of N. Said J. Z. N. deposed, that N. owned a mill property, and Lipps owned the "brush tract," the legal title to which was in J. Z. N., that Lipps traded the "brush tract" to N. for said mill property, and that he, J. Z. N., at the request of Lipps, conveyed the "brush tract" to M. for benefit of Mrs. N. and her children. HELD;

I. The contract of exchange between N. and J. G. R., and also the contract of May 3, 1861, between J. G. R. and his brother E. W. R. were capable of specific execution.

II. The court having decreed a rescission of the contract of sale of May 3, 1861, erred.

4. Where a purchaser knows, when he makes his contract, that there is a defect in the title, and that it will take a considerable time to remove it, or acquires this knowledge after his purchase, and acquiesces in the delay, or proceeds, with knowledge of the defect, in the execution of the contract, he cannot afterwards complain. *Vail* v. *Nelson*, 4 Rand. 478, 481; *Goddin* v. *Vaughn's ex'r et al.*, 14 Gratt. 125.

5. As to decreeing specific performance, the principles laid down in *Abbott* v. *L'Hommedieu*, 10 W. Va. 677, approved.

Appeal from a decree of the circuit court of Greenbrier county, rendered on the 27th day of November, 1874, in a cause, in said court then pending, in which J. G. Rader and others were plaintiffs, and Christopher A. Neal and others were defendants, allowed on the petition of Cyrus H. McClung and others.

Hon Homer A. Holt, judge of the eighth judicial circuit, rendered the decree, appealed from.

MOORE, JUDGE, furnishes the following statement of the case:

On the 24th day of September, 1860, Green A. Rader and Christopher A. Neal, entered into a written contract, whereby said Rader bound himself to convey to said Neal three hundred and fifty acres of land on Meadow river, in consideration of which conveyance said Neal bound himself to transfer and convey to said Rader a certain tract of land of one hundred and forty-nine acres, designated in the proceedings of this cause, as the " Brush tract," and being the same land, on which Neal then resided. Neal to have possession of the three hundred and fifty acres on or before October 1, 1860, " and to surrender possession of the one hundred and fifty (one hundred and forty-nine) acres" on or before the 15th day of May, 1861.

Neal and Rader also bound themseles " each to the other, in the penalty of $1,000.00, to make, or cause to be made, good and sufficient deeds for the lands" thus exchanged. And by an endorsement on the contract, signed by both parties, it was further agreed, that Neal was to have the privilege of seeding the field, he then had in corn, containing about eight or nine acres; Rader to do with the balance of the land, as he saw proper, from the date of the contract, allowing Neal to live in the house, and have his fire wood, until May 15, 1861, and the privilege of keeping his stock on the land.

On the 3d day of May, 1861, Green A. Rader, under his hand and seal, executed the following instrument:

" $1,916.93.

" Due E. W. Rader, upon settlement of all accounts between us, the sum of $1,917.39, with interest from 1st day of May, 1861.

" It is understood however, that I having sold the said E. W. Rader a tract of land, purchased by me of C. A. Neal for $1,500.00, or thereabouts, and when I procure a good title from said Neal, and convey the same to

1878
June Term.

Rador *et al.*
v.
Neal *et al.*

E. W. Rader, the amount is to be deducted from this bond."

Upon that instrument was endorsed, April 9th, 1867, "By cash, C. McClung, administrator of G. A. Rader, one hundred and one dollars."

By will, dated May 22d, 1861, and probated March 10th, 1868, E. W. Rader, gave to his sister, "Elizabeth Dixon, wife of William Dixon," all his estate, to be held by his brother, "J. Griffin Rader, for her sole and separate use and benefit, free from all debts and control of her husband," except that he left $250 to be employed by his mother "in such benevolent purpose, or purposes, as she may think proper."

J. Griffin Rader, as such trustee and as administrator of E. W. Rader's estate, and "Mary A. C. Dickson, wife of William Dickson," as orator and oratrix, filed their bill in chancery, in the circuit court of Greenbrier county, July 29th, 1872, alleging the facts, as stated, the oratrix styling herself, Mary A. C. Dickson, alleging herself the beneficiary of said will, and that the oratrix and her family took possession of the 150 acres of land, and remained there two or three years, "when she was turned out of possession by the said Neal, he coming into possession of the house, whilst she inhabited it; and alleging, that the contract between him and the said Green A. Rader must be annulled, as he could not make title to the land," which she alleged to be true, as before said contract between said Neal and Green A. Rader, said Neal had his brother, John Z. Neal, in whom the legal title was, to convey said one hundred and forty-nine acres of land to a trustee for the benefit of his wife and children, by deed of February 22, 1859, between John Z. Neal of one part, and Joseph Myles, trustee for Mrs. Annie Neal and her children, of the other part.

She further alleged, that since the dispossession of herself by said Christopher Neal, he, said Christopher, had "gone into possession of the three hundred and fifty acre tract, and now occupies it, and still holds the other tract also."

They allege, that they do not know whether Christopher Neal went into possession of the three hundred and fifty acre tract "in pursuance of the original contract," but that "he has continuously, until very recently, disclaimed his ability to make title to the one hundred and fifty acre tract." She, the oratrix, claims to be entitled either to the one hundred and fifty acre tract of land, or the money, $1,500.00, in lieu thereof; but she is kept out of both.

The bill further alleges, that Greer A. Rader died about the time of the death of his brother, Elijah W. Rader, leaving two infant children, viz: James and Calvin; and that Cyrus McClung is his administrator; that said Joseph Myles is also dead, and the names of his heirs are unknown to complainants; that the tract of one hundred and forty-nine or one hundred and fifty acres, aforesaid, was, at the date of the deed from John Z. Neal to Joseph Myles, the property of said Christopher A. Neal, though the legal title was outstanding in said John Z. Neal, who conveyed the same to the trustee, Myles, "at the instance of the said C. A. Neal, with a view to delay, hinder and defraud his creditors." She, the oratrix, prays, that either the land or the $1,500.00 be decreed to her, &c., preferring the money, as there is defect of title to the land, &c.

C. A. Neal answered the bill: "that on the 24th day of September, 1860, he, with the consent of his wife and children, and their trustee, Joseph Myles, entered into a written agreement with Green A. Rader for the exchange of lands, in the manner and upon the terms set out in the plaintiffs' bill;" that the title to the one hundred and fifty acres, which was by said exchange to be conveyed to Green A. Rader, had been, by conveyance from John Z. Neal, his brother, vested in Joseph Myles, for the benefit of said Christopher's wife and children; that said conveyance was not made for any fraudulent purpose; that the land was purchased and paid for by him, and that his brother, "said

John Z. Neal, who held the legal title, at his own instance and without the concurrence of respondent, conveyed to Myles, as aforesaid;" that he has paid all the debts, he owed at the time the conveyance was made to said Myles; that he has never sought to avoid the payment of his debts, nor to evade the performance of his contracts; that at the time of the contract for the exchange of said lands Greer A. Rader knew, that the legal title to said one hundred and fifty acres was vested in said Myles for the benefit of his (said Neal's) wife and children; that respondent, Neal, on or about October 1, 1860, took possession of the three hundred and fifty acres, and has continued in possession thereof ever since, and is still in possession, and has made considerable improvements thereon; that in March, 1861, E. W. Rader, under an agreement between him and said G. A. Rader, set out in the bill, took possession of the one hundred and fifty acres; that respondent rented said land from said E. W. Rader, "and thus occupied the same from March, 1861, till April or May, 1862, when the plaintiff, J. Griffin Rader, moved his co-plaintiff, Dixon, and her family into the house upon said land, which was then occupied by respondent and his family, demanded possession thereof from respondent, and compelled him to leave the land, which he did in a very short time thereafter; that the plaintiff, Dixon, and family continued in possession of said one hundred and fifty acres until June or July, 1865, and claimed and held the same as her own property; that while she was so in possession the place was greatly damaged, nearly all the fencing was destroyed, much valuable timber cut and wasted, the buildings impaired, &c., &c.;" that in 1865, plaintiffs offered respondent $450.00 to cancel the exchange of lands made between him and G. A. Rader, "but before said offer had been considered fully by respondent, the plaintiff, Rader, notified respondent, that he had examined the papers in the clerk's office, and ascertained, that the

exchange was a nullity ; that he intended to destroy the contract of exchange, and advised the respondent to go and take possession of his old '*poor place*,' and told him, that they would not pay the $450.00, before offered. The plaintiff, Dixon, then moved away, and vacated the said one hundred and fifty acre place, and some time after, say about July, 1865, respondent, scarcely knowing what to do under the circumstances, but without any intention of abandoning his contract for exchange of lands, with the consent of the plaintiffs moved back, and took possession of said one hundred and fifty acre tract, and has occupied the same ever since."

Respondent denies, that he turned said Dixon out of the possession of the one hundred and fifty acre tract, or that he ever alleged, that the contract between him and G. A. Rader must be annulled, but on the contrary he took possession of the said land at the instance and request of plaintiffs ; that he always claims and now insists, that said contract of exchange was, and is, valid and binding, and here insists upon its execution ; that the representatives of Myles, trustee, and the wife and children of respondent, are now, and always have been, willing, that said contract should be executed, and that all their title and interest in and to said one hundred and fifty acre tract should be conveyed to the heirs, devisees or assignee of said Green A. Rader ; that all the children of respondent are of full age and *sui juris*, except two, Elizabeth Bell Neal, "who will be of age in about six months," and Joseph C. Neal, who is about fifteen years of age. Respondent also gave the names of the children and heirs at law of Joseph Myles, deceased, and his executor, Gillilan ; that respondent sets up no claim to the one hundred and fifty acres, and has at all times been, and is now, willing to deliver possession to plaintiffs, regarding himself tenant and in possession at the instance and request of plaintiffs, &c., &c. ; he prays, that the contract of exchange may be executed specifically, and that a commissioner be appointed to make conveyance, &c.

Annie Neal, wife of said Christopher, and the adult children of said Christopher, and the husbands of such as had married, and the adult children and heirs of Joseph Myles, deceased, and his executor, Richard H. Gillilan, jointly answered said bill; by which they alleged, that they recognized the validity of the contract of exchange, entered into between Neal and Rader, as alleged in the bill; that they fully assented to it, and are willing and insist upon its specific execution; that they are now, and always have been, ready to execute a conveyance to carry into effect the provisions of said contract, or are willing to have the court appoint a commissioner to convey all their interest in the one hundred and fifty acre tract to such party, as may be entitled thereto under said contract; they also adopt the answer of said C. A. Neal.

The infant defendants, Joseph C. Neal, B. H. Myles, Edgar Myles, James Rader and Calvin Rader, answered the bill by their guardian *ad litem*, W. C. Woodson.

The plaintiffs filed a "special replication" to the answers, to the filing of which the defendant, Neal, objected, but the court overruled the objection. The defendants also demurred to the bill.

McClung, as administrator of G. A. Rader, demurred to and answered the bill, claiming that the bond of $1,916.93 had been paid in full. The Court sustained the demurrer, with leave to the plaintiffs to file an amended bill.

It appears that the plaintiffs amended their bill by interlineation, but in what respect the record does not disclose.

C. A. Neal filed to the amended bill the same answer, that he filed to the original bill, and Annie, his wife, and his children, and the heirs at law and executor of Joseph Myles, deceased, demurred to and answered the amended bill, and filed with the answer a deed with general warranty, dated February 22, 1859, conveying to said James Rader and Calvin Rader the said one hun-

dred and fifty acres of land, signed by said Christopher, his wife and children, and acknowledged by all of them except Joseph C. Neal, he being under age, and tendered, as the answer alleges, bond and security to indemnify any person who may be damaged by reason of the claim of said Joseph C. Neal, should he fail to convey his interest when he arrived at the age of twenty-one years. They also allege, that they "have not set up any claim to said one hundred and fifty acres at any time since the exchange and sale thereof, in September, 1860;" and they insist upon the specific execution of said contract, and pray the court to make an order conveying to respondents the three hundred and fifty acre tract of land, according to the terms of said contract; and they adopt the answer of C. A. Neal to the plaintiff's original bill, as a part of their answer to the amended bill.

R. H. Gillilan, as executor of Joseph Myles, deceased, made and acknowledged a deed, dated September 16, 1873, conveying, with special warranty, to said James and Calvin Rader, as heirs at law of G. A. Rader, deceased, the said one hundred and forty-nine acres of land.

On the 4th of November, 1873, the court heard the cause upon the amended bill, exhibits, demurrer, answers, &c., and the said deeds, and the depositions taken in the cause, and overruled the demurrer to the bill, and being of opinion, that the contract of exchange between Neal and G. A. Rader, of September 24, 1860, should be specifically executed, provided such specific execution would not be prejudicial to the interest of the infant, Joseph C. Neal, referred the cause to Commissioner McWhorter, with directions to ascertain, state, and report to the court:

"*First*—Whether, or not, the exchange of the one hundred and fifty acre tract for the three hundred and fifty acres of land, in the bill mentioned, would be prejudicial to the interests of said Joseph C. Neal, if said contract was at this date specifically executed; and whether, or not, the interests of said Joseph C. Neal can

be fully secured in the three hundred and fifty acres by any conveyance, within the power of the court to make.

"*Second*—Whether, if said contract is specifically executed, there are any facts and circumstances in this case, which make it proper to apply the credit of $1,500.00 in the bill mentioned at any other date, than that set forth upon the face of the writing, upon which the said credit is provided for; and with this view, the commissioner shall state, whether, or not, the said Green A. Rader, and those claiming under him, are entitled to any compensation or abatement upon said credit by reason of the conduct of the defendant, C. A. Neal, or his wife and children, or their trustee, in depriving said Rader, and those claiming under him, of the possession of said one hundred and fifty acre tract in violation of said contract between said Rader and Neal, or inability to complete said contract; and if so, for what sum, and the facts in relation thereto; and any other matters deemed pertinent by himself, or required by any party to this suit."

Pursuant to that order the commissioner "gave the required notice to the parties to convene at his office, on the 13th of February, 1874, when the parties appeared," and the depositions of witnesses were taken "from time to time, as suited the parties;" and he reported, that "to execute the contract between C. A. Neal and Green A. Rader would be to the interest of the infant defendant, Joseph C. Neal;" that the title of Green A. Rader to the three hundred and fifty acres seemed to be good and valid; and that the interest of said Joseph C. Neal can be secured in the three hundred and fifty acres, and "his interest will be promoted by the execution of the contract and by such conveyance;" that "from the evidence, it seems proper, that the credit of $1,500.00 should be applied, as of the date of the writing, to-wit, May 3, 1861."

As to the question of compensation, or abatement upon the $1,500.00, credit, stated in the second matter of

enquiry, the commissioner states : "There is no direct evidence on the question, as to what the annual rental value of the land would be; and therefore your commissioner can come to no certain conclusion on that subject. From all the evidence on both sides touching that point, it seems, that about the time the defendant, C. A. Neal, (in 1866) moved back to the "brush 150 acre farm" with his family, both he and the plaintiff, Rader, were anxious to cancel the contract, and while the defendant Neal, was anxious to obtain some pretext for returning to the "brush farm," the plaintiff, Rader, encouraged him to do so. It does not appear, however, that Neal's family were so anxious about returning. When however Green A. Rader and his brother E. W. Rader settled, and the latter purchased the one hundred and fifty acre tract, for which he gave $1,500.00, it was agreed by them, if the trade did not stand, that the rent of the farm would be worth the interest of the money, which gives an annual rental value of $90.00; but it seems further from the evidence, that when Neal took possession, in the year 1866, the place had been considerably injured in the improvements, and its rental value materially depreciated—allowing the difference to be $20.00, and we have, as the annual rental value, $70.00; and being occupied by Neal from April, 1866, to October, 1872, —six and a half years—$455.00. The improvements made by Neal during his stay thereon are shown to have been about the value of $240.00—leaving to apply on the $1,500.00, as abatement, $215, if this statement should be adopted by the court. If, from what your commissioner has deduced from the testimony, your Honor concludes, that no rent should be allowed the plaintiff, then no abatement will be made to the $1,500.00 credit.

The commissioner, by request of J. G. Rader, who handed him the tax receipts paid by him on the estate of G. A. Rader, charged with a tract of seven hundred and sixty-five acres on Meadow river, &c., "which

includes the three hundred and fifty acres, on which Neal now resides," from 1865, up to and including, 1873, reports the several amounts charged, aggregating $76.96, and that of that amount "there would properly be chargeable to 350 acres $35.21."

The report was excepted to by counsel for the plaintiffs, " because it applies the credit of $1,500.00 to the debt of $1,916.93, as of date of the contract, when it is apparently provided in the contract, that the credit is to be given, only when the title is made ; second, because the commissioner has set off the interest with the rents, even while Neal was in possession of the brush land, claiming it as his own. It was wrong to set it off at all, especially while Neal had it."

The plaintiffs petitioned the court for a re-hearing, as they felt aggrieved by the decree adjudicating, " that the contract of 24th day of September, 1860, for the exchange of lands in the bill mentioned should be specifically executed," &c., and directing the account to be taken, and as there had been "some testimony taken and filed since the hearing."

On the 3d day of August, 1874, the commissioner made a supplemental report, that at the instance of C. A. Neal, he had the " brush farm " surveyed, and there are one hundred and fifty-five and one half acres, including the church lot of one acre; that there appear to be no adverse claims or titles; that the title was in Joseph Myles, trustee (now deceased) for the benefit of Mrs Neal ; but the title appears to have been forfeited for non-payment of taxes for the year 1868, and is on the list of forfeited lands returned by the auditor to the commissioner of school lands."

The commissioner of school lands filed a report, in which he states, there are no persons, who claim said land adversely ; that it was purchased by the State for taxes, and is subject to sale for the benefit of the school fund, unless redeemed.

On the 27th day of November, 1874, Gillilan, executor

·of said Joseph Myles, trustee, &c., (deceased), redeemed the land by paying into court $8.81, the taxes and costs ; and on the said 27th day of November, 1874, the court decreed, that the " contract of sale of said 'brush land,' made by Green A. Rader, deceased, to Elijah W. Rader, deceased, by writing obligatory dated 3d May, 1861, be set aside, and the same is hereby rescinded, but without prejudice to, or effect of any kind upon, said contract of exchange, made between the defendant, C. A. Neal, and Green A. Rader, deceased, by writing dated 24th September, 1860, as to which the court now expresses no opinion," &c.

From this decree, McClung, as administrator of G. A. Rader, deceased, and James and Calvin Rader, by their guardian *ad litem* and *next friend*, W. C. Woodson, have appealed, assigning three grounds of error, viz : 1st. The husband of Mrs. Dickson should have been made a party. 2d. The contract between Green A. and E. W. Rader, of May 3, 1861, should not have been rescinded. 3d. As the two contracts were dependent upon each other, the court should have continued both in force, or rescinded both.

*A. C. Snyder*, for appellants, relied on the following authorities :

Code, ch. 71, §17.; *Id.* ch. 66, §3 ; 53 Ill. 526 ; Story Eq. Pl. §473 ; Cooper Eq. Pl. 124 ; 9 Metc. 469 ; 6 Rand. 658 ; 2 Spence Eq. Jur. 288 ; 2 Meriv. 127 ; 9 East 59 ; 13 Sim. 506 ; 18 Ves. 100 ; 5 Hare 291 ; 50 Mo. 161 ; 14 Gratt. 102 ; 4 Bro. C. C. 329 ; 4 Rand. 487, 481 ; 104 Mass. 407 ; 8 Gratt. 46 ; 2 Lomax Dig. 71 ; 4 Rand. 481 ; 4 Call 288 ; 5 Cranch 262 ; 6 Munf. 406 ; 2 Rob. (old) Pr. 179 ; 14 Johns. 489 ; 104 Mass. 420 ; 21 Gratt. 75 ; 9 Ves. 234, 246 ; Frey on S. P. §278 ; 2 Lom. Dig. 52 ; 2 Rob. (old) Pr. 191-2, and cases cited ; 2 Story Eq. §769 ; 37 Md. 51 ; 15 Wall. 377.

*Samuel Price*, for appellees.

1878
June Term.

Rader et al.
v.
Neal et al.

Syllabus 1.

Syllabus 2.

MOORE, JUDGE, delivered the opinion of the Court: ·

By chapter 66, section 12, Code p. 449, a married woman may sue and be sued without joining her husband in the suit, where the action concerns her separate property. Mrs. Dickson, as devisee of E. W. Rader, deceased, had the right to sue without making her husband a party to the cause, as she held the property in controversy, under the will of E. W. Rader, as separate property.

Although Mrs. Dickson might have had ample remedy at law to enforce the $1,916.93 claim against G. A. Rader, yet by filing her bill in chancery a complete and full settlement of the two transactions, the contract of September 24, 1860, between G. A. Rader and C. A. Neal, and the contract of May 3, 1861, between G. A. Rader and E. W. Rader, could be made without the expense of a multiplicity of suits, and such was her proper course, as the death of E. W. Rader and G. A. Rader, and the trustee, Joseph Myles, necessitated the making of infants parties to the suit, and also to settle the question, raised by the conveyance of the one hundred and forty-nine acre tract of land by John Z. Neal to Joseph Myles, as trustee, for the benefit of Mrs. C. A. Neal. The demurrer was therefore properly overruled.

The appellants urge that the court erred in setting aside and rescinding the contract of sale, made by Green A. Rader to Elijah W. Rader, May 3, 1861.

It appears, that on May 3d, 1861, Green A. Rader executed his bond to his brother, Elijah W. Rader, for $1,916.93, in which is incorporated the following: "It is understood, however, that I having sold to the said E. W. Rader a tract of land purchased by me of C. A. Neal, for $1.500.00 (or thereabouts), and when I procure a good title from said Neal, and convey the same to E. W. Rader, the amount is to be deducted from this bond." Green A. Rader signed, sealed and delivered the contract.

The bill sets up this contract, and alleges the land to be the same one hundred and forty-nine, or, as it is

sometimes designated, one hundred and fifty acre tract, which Neal contracted to exchange with said Green A. Rader for his three hundred and fifty acre tract. None of the parties dispute its being the same tract of land.

As said in argument, "there can be no question of the validity of this contract between the original parties, unless it was incapable of execution on account of matters *dehors* the contract. It is a contract in writing, entered into between parties capable of contracting, and the subject is fully identified."

It is argued, that the contract between the two Raders should be rescinded, because the title to the land at the time of the contract was, and still is, defective. To that it is answered, that the language of the contract itself shows, that the title was not in Green' A. Rader at the time. The language is : "when I procure a good title from said Neal and convey the same to E. W. Rader," &c. Elijah therefore was fully aware, that Green did not have the title, and would have to procure it from Neal. The deposition of McClung states, that "Green and Elijah were both satisfied with the trade, and anxious, that it should stand; they agreed, that they would just let it alone, that neither was losing anything;" that Elijah agreed, that he had the brush land in posession then, and that it was worth the interest of the money he was to pay for it." &c. Such was the expression among others of their feelings at a conference regarding the procuring of the title, showing full knowledge on the part of Elijah as to the true *status* of the title, and that Green would have to procure it from Neal. Elijah even rented the land or a part of it to Neal. Now under the principles of *Goddin* v. *Vaughn's ex'r* &c.. and also *Same* v. *Mason et al.,* 14 Gratt. 125, citing *Pinke* v. *Curtis,* 4 Bro. C. C. 329. I think, the plaintiffs do not come with good grace, under the circumstances, in asking for a rescission of this contract. "Where a purchaser knows, when he makes his contract, that there is a defect in the title,

and that it will take a considerable time to remove it or acquires this knowledge after his purchase, and acquiesces in the delay, or proceeds, with knowledge of the defect, in the execution of the contract. he cannot afterwards complain." *Vail* v. *Nelson, &c.* 4 Rand. 478, 481, per Green Judge.

In the *Vail* case Judge Green says: "The purchaser knew, that no conveyance could be immediately made; and that there was no possible means of removing the impediment, but the efflux of time; yet, with this knowledge, he made the purchase, and proceeded to carry it into effect, as far as under existing circumstances it could be done. And indeed there was no time stipulated for making the conveyance." The Chancellor decreed execution of the contract, and the Court of Appeals affirmed it.

Courts do not sit to overthrow the agreements of parties, but to carry them into effect, where they are legal, and equitable, and reasonable. 3 Leigh 187.

The principle is well established, that " it is not essential, that the vendor had at the time of the contract such title and capacity to convey the property, or such means and right to acquire it, as would enable him to fulfill it on his part. It is sufficient, if he is able to convey, when he is required by the contract, or the equities of the case. And where time is not of the essence of the contract, the vendor will be allowed a reasonable time to obtain a perfect title." *Dresel* v. *Jordon,* 104 Mass. 407; *Mays* v. *Swope,* 8 Gratt. 46.

" Where a contract respecting real property is, in its nature and circumstances, unobjectionable, it is a matter of course for courts of equity to decree a specific performance of it, as it is for a court of law to give damages for the breach of it. And generally courts of equity will decree a specific performance, when the contract is in writing, and is certain, and is fair in all its parts, and is for an adequate consideration, and is capable of being performed; but not otherwise. *Abbott* v. *L'Hommedieu,* 10 W. Va. 677."

"The exercise of the equity branch of jurisprudence, respecting the rescission and specific performance of contracts, is not a matter of right in either party; but it is a matter of discretion in the court; not indeed an arbitrary, or capricious discretion, dependent upon the mere pleasure of the judge, but of that sound and reasonable discretion, which governs itself, as far as it may, by general rules and principles but at the same time withholds, or grants, relief according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties." *Id.* 677.

1878
June Term.

Rader *et al.*
v.
Neal *et al.*

Applying these well sustained principles to the case before us, it seems to me, the circumstances of this case require a specific execution of the contract of May 3, 1861, made between G. A. Rader and E. W. Rader. All the parties are before the court, that are interested in and can be affected by the contract. If its specific execution is enforced, it will be simply carrying out the wish of the original contractors, and furnishing that measure of exact justice, between the parties now interested, which those rules and principles, just cited, most equitably demand. If it is rescinded, it violates those principles, imposes a burden on the estate of G. A. Rader never intended by the original contractors, and not now necessary, but oppressive and prejudicial to the interests of James and Calvin.

As to what is called the repudiation or abandonment by Neal of the contract of September 24, 1860, if the truth can be deduced from the vague, confused and conflicting testimony, the plaintiffs do not stand in a favorable light, not in that light of fair dealing which equity demands. On the contrary it places Neal in the attitude of at least wishing and aiming to be just. It shows a desire on his part, not to abandon the contract, but to carry it out in good faith, if capable of being carried out, and a willingness to peaceably abandon it, if it was

Syllabus 3. 1

not susceptible of legal execution. That it is capable of specific execution, the bill and answers and the depositions place beyond the possibility of doubt.

Neal and family take no advantage of the conveyance, made to Myles for the benefit of Mrs. Neal and children by John Z. Neal, and claim none, but all join in an honest effort to convey the land according to the contract, and appeal to the court for its aid in that respect.

The answers of Neal, his wife, and all the defendants, and the deposition of John Z. Neal, show that the land thus conveyed was not only paid for by Neal, but was conveyed voluntarily to Myles, so far as Neal was concerned, and that too without his concurrence. The purchase of the land from Neal by Rader was *bona fide*, for valuable consideration; and Rader could under the circumstances have compelled a conveyance to himself.

Hence, we may unite in the *quære* made by the appellants: " By what authority could Neal and the plaintiffs, whether actuated by fraudulent or honest motives, good or bad faith, abandon and annul a contract, which they had not made, to the prejudice of those whose rights it affected and without their knowledge or consent ?"

Thus viewing the cause, I am of opinion, that the Syllabus 3. II. court erred in its decree of November 27, 1874, in so far as it rescinded the contract of sale of said " brush land," made by Green A. Rader, deceased, to Elijah W. Rader, deceased, by writing obligatory, dated 3d May, 1860; and as that is the only part of said decree appealed from, and as there are other matters adjudicated by said decree, which will require the further action of said circuit court, the said decree, in so far as it rescinds the said contract for said sale of the brush land, should be reversed with costs, and the cause be remanded to said circuit court, to be proceeded in according to the

principles indicated by this opinion, and further according to the principles governing courts of equity in such cases.

1878
June Term.

Rader *et al.*
v.
Neal *et al.*

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.    CAUSE REMANDED.