[No. 4243.    Decided July 5, 1902.]

## A. W. BASH, *Respondent*, v. CASCADE MINING COMPANY, *Appellant*.

RESCISSION — CONTRACT FOR SALE OF MINING CLAIM — SUFFICIENCY OF TITLE TENDERED.

A contract between vendor and purchaser for a conveyance "by good and sufficient deed in fee simple" upon the payment of the full purchase price must be construed in the light of the circumstances surrounding the property, and where the property was a mining claim for which the vendor had paid the government and held the receiver's certificate therefor, awaiting the issuance of patent, and the purchaser, with a knowledge of the situation, went into possession, worked the claim, made payments thereon, asked and obtained an extension of time for final payment, and, upon the expiration of that time, offered a bonus for a further extension, his final tender of full payment would not entitle him to a rescission and the recovery of payments made, because of the failure of the vendor to produce a patent for the claim, when the vendor stood ready to execute any kind of a deed the purchaser was willing to accept. (DUNBAR, J., dissents.)

Appeal from Superior Court, Thurston County.—Hon. MASON IRWIN, Judge.   Reversed.

*Troy & Falknor,* for appellant.

*Allen Weir* and *Preston, Carr & Gilman,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—On September 9, 1884, the Cascade Mining Company was the owner of five mining claims situated in Negro Creek mining district, in Kittitas county, Wash., and at that time made application to the proper land office for United States patents thereto, paid the purchase price required by law, and obtained the ordinary certificates of purchase. Thereafter, on the 2d day of July, 1891, the Cascade Mining Company entered into a contract with A. W. Bash to sell and convey all the five claims mentioned to Mr. Bash for the sum of $20,-000; $1,000 to be paid in cash, $4,000 in six months, and $15,000 in one year, with interest on deferred payments at the rate of 8 per cent. per annum; and that, upon the final payment being made, the Cascade Mining Company should convey, "by good and sufficient deed in fee simple," the property described. Subsequently, on March 1, 1892, the time for making the $4,000 payment was extended to September 1, 1892, and the time for making the $15,000 payment was extended to the 2d day of January, 1893. The contract further provided that Mr. Bash should have possession of the property with privilege to improve the same, and that, in case the payments were not made when due, then all payments theretofore made should be forfeited to the Cascade Mining Company. Mr. Bash went into possession of the property under the contract, and the first and second payments were made as agreed upon. When the last payment became due, on January 2, 1893, it was not paid. On the following day, the Cascade Mining Company, by a resolution, declared a forfeiture of the contract. There is some dispute in the evidence as to whether or not, after this forfeiture had been declared, an extension of time

for three days was given to Mr. Bash to make the last payment. This point, however, becomes immaterial, for the reason that on the 5th day of January, 1893, Mr. Bash made a tender of the balance due under the contract, and demanded a deed in fee simple. Thereupon, the Cascade Mining Company agreed to accept the money, and offered to make Mr. Bash a warranty deed for all the property. Mr. Bash refused to take this deed for the reason that patents had not been issued by the United States to the Cascade Mining Company. He thereupon took his money, and went away. Subsequently, an action was brought by Mr. Bash in the superior court of Thurston county, against the Cascade Mining Company, for a rescission of the contract, for the return of the money paid thereunder, and for damages. Upon a trial by the court, a jury being waived, findings were made, and judgment entered, in favor of the plaintiff, for the money paid under the contract and expended on the mine, amounting, with interest, to the sum of $10,808.33. This appeal is prosecuted by the defendant below from the judgment so entered.

A large number of errors are predicated upon rulings of the court in the admission of evidence and on the findings of fact made by the court. The facts above set out are undisputed in the evidence, and it will be unnecessary to discuss the many errors assigned, for the reason that the one hereafter discussed disposes of the case upon the merits. The proof shows conclusively that the Cascade Mining Company had paid the purchase price of the mining claims mentioned, and had receiver's certificates therefor from the proper land office; that, at the time of the tender, on January 5, 1893, patents had not been issued by the United States; that these patents were subsequently issued; that the Cascade Mining Company did not refuse to make deeds, but that respondent, Bash, re-

fused to accept deeds without the patent being exhibited
and delivered to him; that the contract provided that the
Cascade Mining Company should, upon the payments be-
ing made, convey to Bash, by good and sufficient deed in
fee simple, the property described. There was no claim
or evidence of any character tending to show that the re-
ceiver's certificates were obtained fraudulently, or that
there were any liens or incumbrances of any kind against
the property; and at the time the tender was made there
was no claim that the Cascade Mining Company was not
the owner of the property; but the conveyance was re-
fused by Bash simply upon the ground that patents had
not issued. The sole question in the case, therefore, is,
can the plaintiff rescind his contract simply because pat-
ents for the mining claims named had not issued to the
appellant at the time the tender was made?

In *Carroll v. Safford,* 3 How. 441, it was held that after
the price of government land had been paid, and the pur-
chaser held the receiver's certificate therefor, the land was
subject to taxation, although the patent was not then is-
sued. The court there said:

"Lands which have been sold by the United States can
in no sense be called the property of the United States.
They are no more the property of the United States than
lands patented. So far as the rights of the purchaser are
considered, they are protected under the patent-certificate
as fully as under the patent. . . . The government,
until the patent shall issue, holds the mere legal title for
the land, in trust for the purchaser."

*Witherspoon v. Duncan,* 4 Wall. 210; *French v. Spen-
cer,* 21 How. 228; *Stark v. Starr,* 6 Wall. 402; *Wirth v.
Branson,* 98 U. S. 118; *Simmons v. Wagner,* 101 U. S.
260; *Deffeback v. Hawke,* 115 U. S. 392 (6 Sup. Ct.
95); *Benson Mining & Smelting Co. v. Alta Mining &*

*Smelting Co.,* 145 U. S. 428 (12 Sup. Ct. 877). In *Stark v. Starr, supra,* it was said:

"The right to a patent once vested is treated by the government, when dealing with the public lands, as equivalent to a patent issued."

In *Deffeback v. Hawke, supra,* the court held that the same rule applied to mineral lands as applied to cash and donation entries of agricultural lands; and in *Benson Mining & Smelting Co. v. Alta Mining & Smelting Co., supra,* where a receiver's receipt had been issued for mineral lands, the court, after reviewing the decisions of the secretary of the interior and the cases above cited, said:

"There is no conflict in the rulings of this court upon the question. With one voice they affirm that, when the right to a patent exists, the full equitable title has passed to the purchaser, with all the benefits, immunities, and burdens of ownership, and that no third party can acquire from the government interests as against him."

It follows that the Cascade Mining Company, at the time it purchased the property from the United States and paid therefor, and received the proper receiver's certificates, was the fee-simple owner of the estate. These certificates stood in place of the patents, and could be set aside only for the same reason, and in the same way, and in the same form, that patents could be set aside. *Wilson v. Fine,* 40 Fed. 52 (5 L. R. A. 141); *Cornelius v. Kessel,* 128 U. S. 456 (9 Sup. Ct. 122). That the patents were not issued at once was because of the magnitude of business in the land department. But such delay in the mere administration of the affairs of the land department does not lessen the title of the purchaser in the lands purchased. The estate was vested upon the issuance of the certificates of purchase, and a deed would convey

the fee as well before patent issued as after. There was no claim that there were any defects in the title of the property; no pretense of any liens or incumbrances. The purchaser was in possession. We are, therefore, of the opinion that the respondent was not justified in refusing to take the deeds when offered, and that he could not rescind the contract and recover back the money paid.

The cause will be reversed, with instructions to the lower court to dismiss the action.

REAVIS, C. J., and ANDERS, FULLERTON, WHITE and HADLEY, JJ., concur.

DUNBAR, J., dissents.

## ON REHEARING.

MOUNT, J.—The reason for the opinion heretofore filed herein (July 5, 1902) is probably not as clearly stated as it ought to be. The case turns on the contract to convey. This contract provides that upon the final payment the vendor shall convey the property described "by good and sufficient deed in fee simple." The meaning of this phrase, as intended by the parties, is the gist of the action. Ordinarily, when a person sells and agrees to convey lands to another by good and sufficient deed in fee simple, and when there are no circumstances to take the case out of the general rule, these words are held to mean a perfect title, both legal and equitable. Rawle, Covenants of Title (5th ed.), § 32; *Powell v. Conant,* 33 Mich. 396; *Moore v. Williams,* 115 N. Y. 586 (22 N. E. 233, 5 L. R. A. 654, 12 Am. St. Rep. 844); *Younie v. Walrod,* 104 Iowa, 475 (73 N. W. 1021); *Easton v. Montgomery,* 90 Cal. 309 (27 Pac. 280, 25 Am. St. Rep. 123). But where, as in this case, the vendee has notice and knowledge of the condition of the title, knows that the title is

perfect in the vendor with the exception of the issuance of the patent, goes into possession of the property and makes improvements thereon, makes payments, asks for and is given an extension of time in which to make his final payment, and, when this extension has expired, asks for and offers a bonus of $500 for further extension, when he knows patents have not issued and that his time for payment has expired,—such facts show clearly that the parties themselves not only intended that the contract to convey by good and sufficient deed in fee simple meant such title as the vendor could convey, and that the vendee was to rely upon the covenants contained in the deed to indemnify himself against loss by reason of the non-issuance of the patent, but also that the parties themselves so construed it, by their subsequent acts and conduct. 1 Warvelle, Vendors, § 24; *Godding v. Decker,* 3 Colo. App. 206 (32 Pac. 832); *Rader v. Neal,* 13 W. Va. 373; *Younie v. Walrod, supra.*

It is insisted in the petition for rehearing that appellant made no offer to convey the property to respondent at the time the tender was made. We have carefully examined the evidence with reference to this point and find there is practically no dispute upon it. The respondent himself testified that, at a meeting of the appellant company called for the purpose of considering his tender, a quitclaim deed was offered him, and that "they would take the money in escrow until they could perfect the title and deliver me patents." R. W. Emmons, representing a large interest in appellant company and a witness for respondent, testified substantially that at this meeting they offered to give respondent a regular deed, a quitclaim deed, a warranty deed, "or any kind of a deed he wanted." T. M. Reed, president of appellant company

and witness for respondent, testified substantially to the same effect.

Petition for rehearing denied.

REAVIS, C. J., and WHITE, HADLEY, FULLERTON and ANDERS, JJ., concur.