### NELSON v. WOOD PLACER MINING CO.

(Circuit Court, D. Montana. November 4, 1908.)

No. 230.

1. MINES AND MINERALS (§ 54*)—CONVEYANCE OF MINING CLAIMS—OPTION CONTRACTS—CONSTRUCTION.

A bond executed by defendant for the conveyance to complainant, on the making by him of certain payments, of certain specified placer mining ground, described a portion as patented, and a portion as mineral entries for which receiver's receipts had been issued, "patent not yet issued, but to be issued." Complainant was put in possession in accordance with the contract, and a deed was made and deposited in escrow at the same time, in which the property was described as in the bond, to be delivered on the making of the deferred payments. Held, that the contract must be construed as one by defendant to convey such title to the several claims, legal or equitable, as it then had, which was fully understood by the parties; that the words "patent not yet issued, but to be issued," were merely descriptive and not words of covenant, and did not bind defendant to convey a patent title.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 54.*]

2. MINES AND MINERALS (§ 54*)—CONTRACT FOR SALE OF MINING CLAIMS—RIGHT OF RESCISSION.

Where complainant's possession and enjoyment of the property under such contract was not disturbed nor threatened, and defendant's title was that described in the contract, the fact that patents for the unpatented claims had not been issued at the time complainant was to make final payment and receive the deed did not afford ground for rescission by him.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 54.*]

In Equity. On final hearing.

Complainant alleges that on October 20, 1902, the defendant covenanted and agreed to sell to complainant on or before January 1, 1904, for the sum of $100,000, six placer mining claims, to all of which claims defendant represented that it had title; that the complainant, believing the representations of the defendant as to the title to said claims, paid to the defendant $10,000 on the purchase price of said claims; that the complainant, on June 1, 1903, still believing the representations of defendant, paid to the defendant $30,000 on the said purchase price; that the complainant, during the mining season

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of 1903, and before he discovered that the representations of the defendant as to its title to two of said claims were not true, placed upon the said mining claims improvements of the value of $32,000; that the complainant, after he had paid $40,000 to defendant, and expended $32,000 in permanent improvements upon said claims, and before January 1, 1904, the date fixed for the final payment of $60,000 upon said purchase price, discovered that the defendant had no title to two of said mining claims; that the applications of the defendant for patent to said two claims had been denied and entry thereof held for cancellation by the Secretary of the Interior on July 16, 1903; that complainant, upon discovering that the defendant did not and could not have title to said two claims, on January 1, 1904, gave notice in writing to the defendant that he would and did rescind the said contract of sale and purchase, that he surrendered the possession of all of said property to the defendant, and demanded that the defendant repay to him the sum of $40,000 theretofore paid by him upon the purchase price of said claims, and also pay to him the sum of $32,000, the value of the permanent improvements placed by him upon said claims; that the defendant has not now, and never had, title to said two claims; that the contract is an entire contract, and that said two claims are a valuable part of the property agreed to be conveyed to the complainant, and are a necessary and material part thereof, and without them the other claims are of small value; and that defendant has never paid to complainant any part of the sum of $72,000. A copy of the contract was attached to the bill, and made a part thereof, and so much of it as is material reads as follows:

"Know All Men by These Presents, that we, the Wood Placer Mining Company, * * * are held and firmly bound unto J. A. Nelson * * * in the sum of $150,000.00, to be paid to the said J. A. Nelson, his executors, administrators or assigns, for which payment well and truly to be made, we bind ourselves, our executors and assigns, firmly by these presents.

"The conditions of the above obligation are such that if the above bounden obligor, shall on or before the 1st day of January, 1904, make, execute and deliver to the said J. A. Nelson, or to his assigns, (provided the said J. A. Nelson shall have on or before said date paid to the said obligor the sum of $100,000.00, in the manner and at the time following, to wit, the sum of $10,000.00 on or before the execution and delivery of these presents; the sum of $30,000.00 on or before the 1st day of June, 1903, and the balance, the sum of $60,000.00, on or before the 1st day of January, 1904, the price by the said J. A. Nelson agreed to be paid for the hereinafter described property if the said Nelson shall purchase this bond, option and agreement) a good and sufficient deed conveying to the said J. A. Nelson, free from all incumbrances, except taxes levied or assessed against the said property for the year 1903, with the usual covenants, all of the hereinafter described placer mining claims and property situated in Hughes Creek (unorganized) Mining District Ravalli county, Montana: That certain placer mining claim for which patent was issued by the government of the United States to the said party of the first part, which said patent was dated on the 3d day of October, 1901, being General Land Office Certificate #34486, and Mineral Certificate #80, which said placer mining claim is survey #5881, and known, called and designated 'The Mountain Guide'; survey #5883, known, called and designated 'The Camis,' and survey #5883, known, called and designated 'The Jim'; the three above mentioned placer claims containing in the aggregate, fifty-eight and 99/100 acres of land; also that certain other placer mining claim patented by the United States to the party of the first part, by patent dated on the 3d day of October, 1901, being General Land Office Certificate #34485 and Mineral Certificate #79, and being survey #5884, known, called and designated 'The Hamilton' placer mining claim, which said claim contains in the aggregate, 157.5 acres; also that certain other placer mining claim, being survey #5885, and known, called and designated 'The Discovery' placer mining claim, and 'The Annex' placer mining claim, being survey #6000, and being mineral entry #94 and for which receiver's receipt was issued to the party of the first part August 2d, 1901; said two claims containing, in the aggregate, 99.64 acres; patent not yet issued but to be issued; * * *

"It is expressly covenanted that it is intended hereby to convey any and all right, title and interest, and estate which may have been acquired, or may hereafter be acquired, to the said premises, or any part thereof, by virtue of any patent which may have been issued, or which may hereafter be issued by the United States government to said placer mining claims or any part thereof; all of the said placer mining claims hereinabove described containing, in the aggregate, 316.13 acres. * * *

"It is further covenanted, understood and agreed, that the said J. A. Nelson shall immediately enter into and take possession of· all the mining claims, water rights, tools, appliances, etc., hereinabove described, and run, use and operate the same as to' him shall seem meet and proper, and continue in possession thereof, unless he shall fail to make the payments as hereinabove provided, and if the said J. A. Nelson shall fail to make such payments in the manner and at the time hereinabove provided, he shall quit, and surrender the possession of said property with its appurtenances, unto the said party of the first part, free from all incumbrances and liens of every nature and kind, and all payments that shall· have been made by the said J. A. Nelson, and all the improvements made on the said property or any part thereof shall be taken, held and considered by the said party of the first part as payment for the use and occupation of the said property, by the said J. A. Nelson, for such time or times as he shall have been in possession of and have had the use and occupation of the same, and that the same shall be accepted by the said party of the first part, in full settlement of any claim, or demand, damage or penalty for or against the said J. A. Nelson, on account of said failure to purchase said property in the manner herein provided.

"And the said party of the first part, in consideration of the premises, further covenants, promises and agrees that it will this day make, execute and deposit in the First National Bank of Missoula, its deed of conveyance, as hereinabove provided, accompanied by an escrow direction and agreement to the cashier of said bank, directing and requiring him to hold the said deed and deliver the same to the said J. A. Nelson, his heirs or assigns, upon the payment to the said cashier of the said bank, to the credit of the party of the first part, its agents or trustees named in said escrow agreement, the sum of $90,000.00, to be paid as follows, to-wit: $30,000.00 on or before the 1st day of June, 1903, and $60,000 on or before the 1st day of January, 1904, and further providing that if the said J. A. Nelson shall fail to make such payments to the cashier of the said bank, at the times and in the manner hereinabove provided, that the said bank shall hold said deed subject to the order and direction only of the said party of the first part; but if the said payments shall be made as in said escrow direction provided, then the said bank is ordered and directed to deliver the said deed to the said J. A. Nelson, and hold the funds so paid subject to the order and direction of the said party of the first part."

Complainant prays for a decree awarding him the sum of $72,000, with interest, and that a lien be fixed upon the placer claims, that the property be sold, and for general relief.

The defendant, by its answer, admits the contract as set forth in the bill; pleads that, in accordance with the terms of the agreement, an escrow contract was entered into, and denies that there was any other understanding than as shown by the contract; and denies that it represented to complainant any other than the true condition of its title to each and all of said placer claims. Defendant avers that the complainant well knew and understood the condition of defendant's title to each and all of said placer claims, and alleges that the complainant well knew that defendant's title to all of the premises agreed to be conveyed was a good, valid, and sufficient title, and that the attempt on the part of complainant to rescind the said contract was not because complainant was desirous of purchasing the property under the said option, but because he was unable to make the final payment on the purchase price, and was unable to perform his part of said contract. The defendant attached to its answer, as a part thereof, a copy of the deed, referred to in the answer, which was placed in escrow in the First

National Bank of Missoula, in which deed the claims are described in the same language as in the contract.

Complainant filed a formal replication.

Thereafter the case was referred to the master in chancery to take the testimony, and the same was reported to the court.

Marshall & Stiff, for plaintiff.

Forbis & Evans, F. H. Woody, and R. A. O'Hara, for defendant.

HUNT, District Judge (after stating the facts as above). Examination of the record shows that the contract and option of October 20, 1902, between complainant and defendant, bound defendant to convey to complainant at or before the time stated, January 1, 1904, by good and sufficient deed with the usual covenants, certain specified placer mining ground, portion of which was described in detail as patented, but portion of which was specially described as a mineral entry, for which receiver's receipt had been issued on August 2, 1901, "patent not yet issued, but to be issued." This language, together with the terms of the whole instrument, must be taken as evidence that when the contract was made the complainant, as well as defendant, knew that the title of defendant to the two claims known as "Discovery" and "Annex" was not a patent title proper, but was whatsoever interest, right, and title the defendant was vested with pursuant to the statutes of the United States, and the decisions of the Supreme Court defining the rights of one who has a receiver's receipt for a placer mineral entry.

That such was the intent of the contract is also clear by the further covenant:

"That it is intended hereby to convey any and all right, title and interest and estate which may have been acquired, or may hereafter be acquired to the said premises or any part thereof, by virtue of any patent which may have been issued, or which may hereafter be issued by the United States government to said placer mining claims or any part thereof, all of the said placer mining claims hereinabove described containing in the aggregate three hundred and sixteen and $13/100$ acres."

The deed in escrow, containing clause of warranty, dated October 20, 1902, also described the property exactly as it had been described in the contract and bond, and contained exactly the same covenant that the estate and title conveyed were all the right, title, and interest and estate of the defendant that had been acquired, or might thereafter be acquired, by patent already issued, or which might thereafter be issued to the placer claims described, or any part thereof.

There is, therefore, perfect harmony between the contract and the deed in escrow, so that an understanding of the whole evidence is much simplified. Both instruments expressly state that the purchaser was to acquire all the rights of the Wood Placer Company to the property described that that company had under patents already issued, or that might thereafter issue; and both prove the knowledge of the parties as to the kind of title transferred, because both expressly recite that for two of the claims no patent had been issued, but was to be issued.

The transaction, as it appears by the writings and the testimony of the witnesses, is to be regarded as not an uncommon one; for there is nothing at all unusual in the purchase and sale of a mining claim

167 F.—14

where the vendor is in possession with a receiver's receipt, as the evidence of his title and right to a patent. The evidence proves that complainant knew exactly what he was buying, and was satisfied with the status of the title and deed in escrow. He knew that patents had not issued, and, fraud by defendant not having been proven, complainant must be held to the knowledge that patents might possibly be delayed or even withheld by the United States for noncompliance with the law or the regulations of the Land Department. That is to say, complainant knew that, until consummation of the title by patent, the defendant acquired an equity—a right subject to examination by the Department of the Interior. There were, however, no adverse claims pending against the Annex or Discovery locations; there were, in fact, no defects in the essentials of the right to the two claims not patented; complainant was put in exclusive possession and right of enjoyment, and could not have been successfully molested by any one. Possession of patents for the two claims would, of course, have added to the security of the title of the vendee; yet, having knowingly taken title with application for patent pending, and being in exclusive possession under claim of exclusive right, he acquired a very high property ownership, such a one as is daily recognized in the practice of conveying mining claims, and as is consistently upheld by the courts in their adjudications. Cosmos Exploration Co. v. Gray Eagle Oil Co., 112 Fed. 4, 50 C. C. A. 79, 61 L. R. A. 230; Clipper Mining Co. v. Eli M. & L. Co., 194 U. S. 220, 24 Sup. Ct. 632, 48 L. Ed. 944.

The words "patent not yet issued, but to be issued," as used in the contract and option, are merely descriptive of the status of the title. to the Annex and Discovery claims. They are not to be construed as words of covenant on the part of the vendor that patents would issue for the claims, or, as already indicated, that any higher title was conveyed than that which was vested in defendant by virtue of the receiver's certificates, and any rights antecedent thereto. Bash v. Cascade Mining Co., 29 Wash. 50, 69 Pac. 402, 70 Pac. 487. Were the case one where third parties had interrupted the possession and enjoyment of complainant, and had made claim, or where the evidence showed that actual misrepresentation or fraud on defendant's part had entered into the transaction, different propositions would demand consideration.

The testimony is conclusive of the view that complainant has no equity in his case. He has received the property he purchased, has had every right of undisturbed enjoyment of it, he has been secure in his possession, and never has been molested or threatened in the title. The doctrine of Ankeny v. Clark, 148 U. S. 345, 13 Sup. Ct. 617, 37 L. Ed. 475, does not appear to me to affect this case. There the court held that a quitclaim deed to the land involved was not a good title under the contract which Clark had made with Ankeny. But in this case, the conveyance passed precisely what title the contract called for. The evidence here shows, too, that complainant can now strengthen his title by accepting the patents which it appears have been issued since January, 1904, and thus he may acquire the very title that he has contended for.

Finally, I can find no excuse that can be based upon any correct principle of right for his claim of rescission upon the ground of a failure of title.

The bill must, therefore, be dismissed.